UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re:<br><br>Afnan Mohammed Husain<br><br>           Debtor. | CHAPTER 7 CASE<br>CASE NO. 25-30895<br><br>**RESPONSE OF BRIDGECREST CREDIT COMPANY, LLC AS SERVICER FOR CARVANA LLC TO EMERGENCY MOTION** |

The debtor moves the court for an emergency order to enforce the automatic stay, compel immediate turnover and sanctions ("Motion"). For the reasons set forth below, the debtor's request is improper, misguided and must be denied.

I.      THE DEBTOR IS NOT ENTITLED TO POSSESSION OF THE VEHICLE.

The debtor claims Bridgecrest Credit Company, LLC as servicer for Carvana LLC ("Bridgecrest") does not hold a perfected lien on the underlying vehicle. This is the basis for debtor's claim that Bridgecrest improperly repossessed the underlying vehicle and must return the vehicle to debtor's possession. The debtor has failed to produce any evidence or even make a claim that she has paid the amount owed under the underlying contract. Bridgecrest has never issued a lien release related to the underlying contract (Bridgecrest Aff. ¶ 4). The debtor has induced the Minnesota Department of Public Safety Driver and Vehicle Services to issue a new lien card which identifies Delani Aurora Living Trust as the first secured party and Afnan Husain Private Bank E&T as the owner (*Id*. at ¶ 6). This was done without the knowledge or consent of Bridgecrest and in violation of the underlying contract (*Id.* at ¶ 8). Bridgecrest has discussed this matter with the state of Minnesota and will be working towards remediating this error in the very near future (*Id.* at. ¶ 7). At the very least, the court must require the debtor to supply copies of what documentation she submitted to the state of Minnesota in order to effectuate this fraudulent

change in title and lien priority status. In speaking with the state of Minnesota, counsel for Bridgecrest was told a lien release was submitted on November 15, 2024 (Kipp Aff. ¶ 2). This fraudulent lien release was submitted in person on Carvana letterhead and was notarized by a Sara J. Harkins (*Id.* at ¶ 3). No such employee works for Carvana (*Id* ). Counsel for Bridgecrest has requested the title and lien history. However, the processing of that request can take several weeks (*Id.* at ¶ 4).

The debtor is perpetrating fraud upon the state of Minnesota by submitting a forged lien release and is perpetrating a fraud upon this Court by attempting to regain possession of the underlying vehicle despite never paying the account in full and illegally transferring the lien and title. Bridgecrest should not be ordered to return the vehicle when Bridgecrest has absolutely zero adequate protection in that the debtor would now be able to sell the vehicle without notice or payment to Bridgecrest based on the debtor's fraudulent acts. Based on the foregoing, and in the interest of justice, Bridgecrest respectfully requests that the court refrain from ordering return of the vehicle to the debtor.

II.     THERE IS NO VIOLATION OF THE AUTOMATIC STAY

The case law the debtor cites for support that the ongoing retention of the vehicle by Bridgecrest is a violation of the automatic stay is inapposite. Each of the cases debtor cites have been abrogated or other courts have declined to follow the rulings. One of the automatic stay's primary designs is "to maintain the status quo between the debtor and [his] creditors, thereby affording the parties in the [Bankruptcy] court an opportunity to appropriately resolve competing economic interests in an orderly and effective way." *In re Denby-Peterson*, 941 F.3d 115, 126 (3rd Cir., 2019) (citing *Taylor v. Slick*, 178 F.3d 698, 702 (3rd Cir. 1999) (quoting *Zeoli v. RIHT Mortg. Corp.*, 148 B.R. 698, 700 (D.N.H 1993)). Similar to the *Denby-Peterson* case,

Bridgecrest repossessed the vehicle pre-petition and merely has possession of the vehicle at this time. "Although the creditors exercised control over the Corvette by keeping it in their possession after learning of the bankruptcy filing, the requisite post-petition affirmative 'act…to exercise control over' the Corvette is not present in this case." *Id.* (citing 11 U.S.C. §362(a)(3)).

A creditor that retains possession of property seized pre-petition removes the debtor's possessory standing. "Stated in another way, interests in property that the debtor holds on the petition date do not include possession of property held, instead, by a creditor." *In re Hall*, 502 B.R. 650, 667 (Bankr. D.C. 2014). As such, Bridgecrest is under no current obligation to return the vehicle to the debtor. This is especially true when the debtor has taken the apparent steps to fraudulently remove Bridgecrest's name for the title card. Requiring Bridgecrest to return the vehicle will cause significant risk of loss to Bridgecrest. The court must deny the debtor's motion.

## **CONCLUSION**

The court should deny the debtor's motion based on the foregoing recitation of facts, circumstances and law.

Dated: April 4, 2025                                            **WILFORD GESKE & COOK, P.A.**

/s/    Orin J. Kipp
Orin Kipp, #0390438
7616 Currell Blvd., Suite 200
Woodbury, MN 55125
651-209-3338
okipp@wgcnm.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:

Afnan Mohammed Husain

Debtor.

CHAPTER 7 CASE
CASE NO. 25-30895

**AFFIDAVIT OF BRIDGECREST CREDIT COMPANY, LLC AS SERVICER FOR CARVANA LLC**

Nyam Coderre, being duly sworn, deposes and says:

1. I am Nyman Coderre, Bankruptcy Vendor Manager for Bridgecrest Credit Company, LLC as servicer for Carvana LLC. I have personal knowledge of the facts stated herein upon my review of the underlying records and accounts in connection with this matter.

2. I am familiar with the manner in which the books and records are created and maintained and I regularly rely on these books and records in the performance of my duties.

3. On or about October 24, 2024 the debtor entered into a Retail Installment Contract and Security Agreement with Carvana, LLC in the amount of $21,085.75. This amount financed the purchase of a 2018 Honda CR-V with a VIN of 7FARW2H85JE073819 ("Contract"). A true and correct copy of the Contract is attached hereto as Exhibit 1.

4. As of April 4, 2025, the balance owed on the account $22,674.76. The debtor has failed to make any contractual payments on the Contract since January 3, 2025. Neither Bridgecrest Credit Company, LLC or Carvana LLC have ever issued a lien release related to the underlying contract.

5. The vehicle was repossessed for failure to comply with the contractual obligations on March 26, 2025.

6. Upon information and belief, the debtor has fraudulently induced the Minnesota

Department of Motor Vehicles to transfer the title of the vehicle into the name of Afnan Husain Private Bank E&T with Delani Aurora Living Trust as a lienholder without authorization of Bridgecrest Credit Company, LLC or Carvana LLC. An accurate copy of the true and correct title card is attached hereto as Exhibit 2 and correctly references Carvana as the lien holder.

7. Bridgecrest Credit Company, LLC has been in contact with the Minnesota Department of Motor Vehicles and is in the process of having the title registration remediated in order to indicate the correct reference to all lien holders and registrants. This process will be completed once the automatic stay is no longer in place and Bridgecrest is able to enforce its non-bankruptcy law remedies.

8. Debtor has not satisfied the obligations under the terms and conditions of the Contract and has acted in bad faith in fraudulently altering the title to the underlying vehicle.

Date: 4/4/2025

_____
Nyman Coderre
Bankruptcy Vendor Manager
Bridgecrest Credit Company, LLC as servicer for Carvana, LLC

State of _Texas_

County of _Tarrant_

Subscribed and sworn before me this __4th__ day of April, 2025 by Nyman Coderre.

_____
Notary Public



INDIIA SMITH
Notary Public, State of Texas
Comm. Expires 08-17-2027
Notary ID 134513980

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

MN-102 8/1/2024

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | | Summary | |
|---|---|---|---|---|
| CARVANA, LLC | Afnan Mohammed Husain | N/A | No. | |
| 3321 MIKE COLLINS DR | 1220 Brook Ave SE | | Date | 10/24/2024 |
| EAGAN, MN 55121-2235 | Minneapolis MN 55414-7545 | | | |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate The cost of your credit as a yearly rate. | Finance Charge The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid when you have made all scheduled payments. | Total Sale Price The total cost of your purchase on credit, including your down payment of $890.00 |
|---|---|---|---|---|
| 23.250 % | $ 17,284.89 | $ 21,085.75 | $ 38,370.64 | $ 39,260.64 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 68 | $ 557.00 | Monthly Beginning 11/24/24 |
| 1 | $ 494.64 | 07/24/30 |
| N/A | $ N/A | N/A |

**Security.** You are giving us a security interest in the Property purchased.

☐ **Late Charge.** If a payment is more than 10 days late, you will be charged the greater of 5% of the unpaid installment, or $9.68 (or the highest amount allowed by law under Minn. Stat. § 47.59).

**Prepayment.** If you pay off this Contract early, you will not have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2018 | Honda | CR-V | Sport Utility | 7FARW2H85JE073819 | 99,638 |

Other: N/A

☐ New
☒ Used
☐ Demo

## Description of Trade-In

N/A
N/A

## Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("Agreement") applies: ____N/A____
____N/A____. The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

until paid in full. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed*.

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

☐ **Loan Administrative Fee.** You agree to pay an additional loan administrative fee of $25.00 that will be ☐ paid in cash. ☐ financed over the term of the Contract.

## Sales Agreement

**Payment.** You promise to pay us the principal amount of
$ 21,085.75 plus finance charges accruing on the unpaid balance at the rate of 23.250 % per year from the date of this Contract

Initial

Retail Installment Contract-MN Not for use in transactions secured by a dwelling.
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
Bankers Systems®
Page 1 of 5

## Itemization of Amount Financed

| | | |
|---|---|---|
| a. | **Cash Price** of Vehicle, etc. (incl. sales tax of $ 1,414.25 ) | $ 21,004.25 |
| b. | Trade-in allowance | $ N/A |
| c. | Less: Amount owing, paid to (includes k): N/A | $ N/A |
| d. | Net trade-in (b–c; if negative, enter $0 here and enter the amount on line k) | $ N/A |
| e. | Cash payment | $ 200.00 |
| f. | Clean Vehicle Tax Credit | $ N/A |
| g. | Deferred down payment | $ 0.00 |
| h. | Other down payment (describe) (Upfront Nonrefundable) Shipping | $ 690.00 |
| i. | **Down Payment** (d+e+f+g+h) | $ 890.0 |
| j. | **Unpaid balance of Cash Price** (a–i) | $ 20,114.25 |
| k. | Financed trade-in balance (see line d) | $ 0.00 |
| l. | Paid to public officials: | |
| | i. Total Fees | $ 281.50 |
| | ii. N/A | $ 0.00 |
| | iii. N/A | $ 0.00 |
| m. | Insurance premiums paid to insurance company(ies) | $ 0.00 |
| n. | Gap Waiver paid to Seller | $ N/A |
| o. | Service Contract, paid to: N/A | $ N/A |
| p. | Optional electronic transfer fee, paid to: N/A | $ N/A |
| q. | To: (Upfront Nonrefundable) Shipping | $ 690.00 |
| r. | To: N/A | $ N/A |
| s. | To: N/A | $ N/A |
| t. | To: N/A | $ N/A |
| u. | To: N/A | $ N/A |
| v. | To: N/A | $ N/A |
| w. | To: N/A | $ N/A |
| x. | To: N/A | $ N/A |
| y. | To: N/A | $ N/A |
| z. | To: N/A | $ N/A |
| aa. | **Total Other Charges** amts Paid (k thru z) | $ 971.50 |
| bb. | **Prepaid Finance Charge** | $ N/A |
| cc. | **Amount Financed** (j+aa-bb) | $ 21,085.75 |

We may retain or receive a portion of any amounts paid to others.

[This area intentionally left blank.]

## Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are **not required to obtain credit and are not a factor in the credit decision.** We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below **only** the coverages you have chosen to purchase.

**Credit Life**
☐ Single   ☐ Joint   ☐ None
Premium $ N/A      Term N/A
Insured N/A

**Credit Disability**
☐ Single   ☐ Joint   ☐ None
Premium $ N/A      Term N/A
Insured N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

_____N/A_____N/A____
By: N/A                                    DOB
Date ____N/A____

_____N/A_____N/A____
By: N/A                                    DOB
Date ____N/A____

_____N/A_____N/A____
By: N/A                                    DOB
Date ____N/A____

**Property Insurance.** You must insure the Property. **You may purchase or provide the insurance through any insurance company reasonably acceptable to us.** The collision coverage deductible may not exceed $ 1,000 . If you get insurance from or through us you will pay $ N/A for N/A of coverage.

This premium is calculated as follows:
☐ $ N/A   Deductible, Collision Cov.   $ N/A
☐ $ N/A   Deductible, Comprehensive   $ N/A
☐ Fire-Theft and Combined Additional Cov.   $ N/A
☐ N/A   $ N/A

Liability insurance coverage for bodily injury and motor vehicle damage caused to others is not included in this Contract unless checked and indicated.


Initial

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☐ **Service Contract**
Term _____N/A_____
Price $ _____N/A_____
Coverage _____N/A_____

☐ **Gap Waiver** or ☐ **Gap Insurance**
Term _____N/A_____
Price $ _____N/A_____
Coverage _____N/A_____

☐ **Cosmetic Protection**
Term _____N/A_____
Price $ _____N/A_____
Coverage _____N/A_____

Signed by: *[signature]*    10/24/2024
15D3AF6415E242C...
By: Afnan Mohammed Husain    Date

By: N/A    N/A    Date

By: N/A    N/A    Date

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. You also agree that the purchase of the Property on credit takes place at the Seller's licensed location identified at the top of page 1 of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, you have a right to a refund of the excess charge. If you agree, or if you do not make a timely request for a refund, we will first apply the refund amount to reduce the principal balance, and when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law. No refund of credit life or credit disability insurance premiums will be paid if the amount of the refund would be less than $5.00, unless otherwise provided by law.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of $30.00 if permitted by law.

**Governing Law and Interpretation.** This Contract is governed by the law of Minnesota and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days' notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if you fail to perform any obligation that you have undertaken in this Contract, except as prohibited by law.

If you default, you agree to pay court costs, attorneys' fees, and fees for repossession, repair, storage and sale of the Property securing this Contract. If this Contract is subject to the Minnesota Motor Vehicle Retail Installment Sales Act, the amount of attorneys' fees will not exceed 15% of the unpaid debt after default and referral to an attorney not a salaried employee of ours.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

- We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
- We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the rate described in the *Payment* section until paid in full.
- We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
- We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.
- We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.
- Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy to the extent permitted by law. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

Initial 

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You must pay this Contract even if someone else has also signed it.
- We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- We may release any security and you will still be obligated to pay this Contract.
- If we give up any of our rights, it will not affect your duty to pay this Contract.
- If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- You agree not to remove the Property from the U.S. without our prior written consent.
- You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- You will pay all taxes and assessments on the Property as they become due.
- You will notify us with reasonable promptness of any loss or damage to the Property.
- You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to the maximum deductible amount indicated in the *Insurance Disclosures* section or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance or name us as loss payee, we may obtain insurance to protect our interest in the Property. We will notify you if we do so. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the rate described in the *Payment* section until paid in full. However, if this Contract is assigned and the Assignee is not a financial institution as defined by Minn. Stat. § 47.59, this amount will earn finance charges from the date paid at 8% per year or, at our option, the highest rate the law allows.

**Gap Waiver or Gap Insurance.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You may have the option of purchasing Gap Waiver or Gap Insurance to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Insurance agreements. Any Gap Waiver that you buy from us is part of this Contract.

## Notices

Note. If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. **NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Sí compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

## Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payment it requires. Your interest in the Property may be used to satisfy the Buyer's obligations. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

You acknowledge receipt of a completed copy of this Contract.

| N/A | N/A |
|---|---|
| By: | Date |
| Signature of Third Party Owner (NOT the Buyer) | |

[This area intentionally left blank.]

Retail Installment Contract-MN Not for use in transactions secured by a dwelling.
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
Initial

Bankers Systems®
Page 4 of 5

## Acknowledgment for Electronic Signatures

[X] **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## Signature Notices

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.

## Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

Signed by: [signature]
15D3AF6415E242C...                              10/24/2024
By: Afnan Mohammed Husain                       Date

_____N/A_____ _N/A_
By: N/A                                          Date

[signature]                                     10/24/2024
By: CARVANA, LLC                                Date

**Notice to Buyer.** (1) Do not sign this Contract before you read it or if it contains any blank spaces. (2) You are entitled to a completely filled-in copy of this Contract.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

**IMPORTANT. THIS MAY BE A BINDING CONTRACT AND YOU MAY LOSE ANY DEPOSITS IF YOU DO NOT PERFORM ACCORDING TO ITS TERMS.**

Buyer

Signed by: [signature]
15D3AF6415E242C...                              10/24/2024
By: Afnan Mohammed Husain                       Date

_____N/A_____ _N/A_
By: N/A                                          Date

_____N/A_____ _N/A_
By: CARVANA, LLC                                 Date

Seller

[signature]                                     10/24/2024
By: CARVANA, LLC                                Date

**Assignment.** This Contract and Security Agreement is assigned to _N/A_____,
the Assignee, phone ___N/A_____. This assignment is made under the terms of a separate agreement made between the Seller and Assignee.
☐ This Assignment is made with recourse.

Seller

_____N/A_____ _N/A_
By: N/A                                          Date

[This area intentionally left blank.]

Retail Installment Contract-MN Not for use in transactions secured by a dwelling.
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

Initial [signature]

Bankers Systems®
Page 5 of 5

Minnesota Department of Public Safety
Driver and Vehicle Services
445 Minnesota St, St Paul, MN 55101
**Web**: drive.mn.gov  **Phone**: 651-297-2126
**TTY** for hearing impaired customers: 651-282-6555

Pre-Sorted
First-Class Mail
U.S. POSTAGE
PAID
Permit No. 171
Twin Cities MN

## Notification of Lien Perfection

**Retain this document** – See reverse side of this form for removing this lien.

| Plate no. | Make | Title no. | VIN |
|---|---|---|---|
| RRM424 | HOND | 23373789-1 | 7FARW2H85JE073819 |

| Model Yr. | Model | Security Date | Lien Holder |
|---|---|---|---|
| 18 | LLCRV | 10/24/24 | 1ST SECURED PARTY |

HUSAIN AFNAN MOHAMMED
1220 BROOK AVE SE UNIT 313
MINNEAPOLIS MN 554147545

T17  P3******AUTO**MIXED AADC 550
CARVANA
PO BOX 29002
PHOENIX AZ  85038-9002

***STATE OF MINNESOTA***
**CERTIFICATE OF LIEN RELEASE
TO A MOTOR VEHICLE**

*This security interest is hereby released on _____*

*Date*

**X** _____    _____

*Signature of Authorized Agent*    *Title*

# IMPORTANT – DO NOT DESTROY

*This Certificate of Lien Release must be attached to the original Certificate of Title to establish clear ownership.*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:

Afnan Mohammed Husain

        Debtor.

CHAPTER 7 CASE
CASE NO. 25-30895

**AFFIDAVIT OF ORIN J. KIPP**

Orin Kipp, being duly sworn, deposes and says:

1. I am Orin Kipp, attorney for Bridgecrest Credit Company, LLC as servicer for Carvana LLC. I have personal knowledge of the facts stated herein upon my review of the underlying records and accounts in connection with this matter.

2. On April 4, 2025 I spoke with the state of Minnesota regarding the status of the underlying lien records for the subject vehicle. I was told a lien release was submitted on November 15, 2024 in person and was printed on Carvana letterhead.

3. The lien release was notarized by a Sara J. Harkins as a Minnesota notary. Upon information and belief, no such person is employed by Bridgecrest Credit Company, LLC or Carvana LLC.

4. The title and lien history has been requested but that application can take several weeks to process.

Pursuant to Minn. Stat. § 338.116 I declare that under penalty of perjury the foregoing is true and correct.

Dated: April 4, 2025                                                          /s/ Orin J. Kipp

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | CHAPTER 7 CASE |
| | CASE NO. 25-30895 |
| Afnan Mohammed Husain | |
| | UNSWORN DECLARATION FOR PROOF |
| Debtor(s). | OF SERVICE |

     James Ockwig, employed by Wilford, Geske & Cook, P.A., attorneys licensed to practice law in this Court, with office address at 7616 Currell Boulevard, Suite 200, Woodbury, MN 55125, declares that on April 4, 2025, I served the annexed Response of Bridgecrest Credit Company, LLC as Servicer for Carvan LC to Emergency Motion,  Affidavit of Bridgcrest Credit Company, LLC as Servicer for Carvana LLC, and Affidavit of Orin J. Kipp to each person referenced below, a copy thereof by enclosing the same in an envelope with first class postage prepaid and depositing same in the post office at Woodbury, Minnesota addressed to each of them as follows:

Afnan Mohammed Husain
PO Box 4272
Mankato, MN 56002

and delivered by e-mail notification under CM/ECF on the day efiled with the Court to each of them as follows:

Michael S. Dietz

The Office of the United States Trustee

And I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: April 4, 2025

                                              /e/ James Ockwig
                                                James Ockwig