UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In Re:

Afnan Mohammed Husain

Debtor.

CHAPTER 7 CASE
CASE NO. 25-30895
**AMENDED**
**AFFIDAVIT OF CARVANA LLC**

Samantha Foster, being duly sworn, deposes and says:

1. I am Samantha Foster, Associate Director of Treasury Operations for Carvana, LLC ("Carvana"). I have personal knowledge of the facts stated herein upon my review of the underlying records and accounts in connection with this matter.

2. I am familiar with the manner in which the books and records are created and maintained and I regularly rely on these books and records in the performance of my duties. I am familiar with the facts and records at issue in this matter and am familiar with the account of Afnan Mohammed Husain ("Debtor"). Further, I am familiar with the practices related to customer purchases of vehicles, specifically that Carvana does not issue lien releases for vehicles customers finance through Carvana.

3. Due to staffing shortages, work volume and proximity to the Courthouse related to this matter, Carvana is unable to produce a knowledgeable representative in person for testimony in this matter.

4. The Debtor entered into a Retail Installment Contract and Security Agreement with Carvana, LLC in the amount of $21,085.75 dated October 24, 2024. This amount financed the purchase of a 2018 Honda CR-V with a VIN of 7FARW2H85JE073819 ("Contract"). A true and correct copy of the Contract is attached hereto as **Exhibit 1**.

5. Carvana, has not issued a lien release related to the underlying contract. It is not Carvana's practice to issue lien releases for vehicles that customers finance. Rather, Bridgecrest Credit Company, LLC ("Bridgecrest"), the entity that services those customer accounts that are Carvana-financed, issues a lien release once an account has been fully satisfied.

6. On March 26, 2025, the at-issue vehicle was repossessed for failure to comply with the contractual obligations outlined in the Contract. Bridgecrest coordinated the repossession of the vehicle.

7. Upon information and belief, the debtor has fraudulently induced the Minnesota Department of Motor Vehicles to transfer the title of the vehicle into the name of Afnan Husain Private Bank E&T with Delani Aurora Living Trust as a lienholder without Carvana's authorization. An accurate copy of the true and correct title card is attached hereto as **Exhibit 2** and correctly references Carvana as the lien holder.

8. Debtor has not satisfied the obligations under the terms and conditions of the Contract and has acted in bad faith in fraudulently altering the title to the underlying vehicle. Carvana is the correct lien holder and should be listed as such on the title card for the vehicle.

Date: 04/24/2025

_____
Samantha Foster
Associate Director, Treasury Operations
for Carvana, LLC

State of Arizona
County of Maricopa

Subscribed and sworn before me this 24th day of April, 2025 by Samantha Foster.

_____
Notary Public

MN-102 8/1/2024

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary |
|---|---|---|
| CARVANA, LLC<br>3321 MIKE COLLINS DR<br>EAGAN, MN 55121-2235 | Afnan Mohammed Husain     N/A<br>1220 Brook Ave SE<br>Minneapolis MN 55414-7545 | No. ███<br>Date 10/24/2024 |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate<br>The cost of your credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of<br>$ 890.00 |
|---|---|---|---|---|
| 23.250 % | $ 17,284.89 | $ 21,085.75 | $ 38,370.64 | $ 39,260.64 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 68 | $ 557.00 | Monthly Beginning 11/24/24 |
| 1 | $ 494.64 | 07/24/30 |
| N/A | $ N/A | N/A |

**Security.** You are giving us a security interest in the Property purchased.

☐ **Late Charge.** If a payment is more than 10 days late, you will be charged the greater of 5% of the unpaid installment, or $9.68 (or the highest amount allowed by law under Minn. Stat. § 47.59).

**Prepayment.** If you pay off this Contract early, you will not have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2018 | Honda | CR-V | Sport Utility | 7FARW2H85JE073819 | 99,638 |

Other: N/A

☐ New
☒ Used
☐ Demo

## Description of Trade-In

N/A
N/A

## Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("*Agreement*") applies: ____N/A____
____N/A____. The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

until paid in full. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed*.

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

☐ **Loan Administrative Fee.** You agree to pay an additional loan administrative fee of $25.00 that will be ☐ paid in cash. ☐ financed over the term of the Contract.

## Sales Agreement

**Payment.** You promise to pay us the principal amount of $ 21,085.75 plus finance charges accruing on the unpaid balance at the rate of 23.250 % per year from the date of this Contract

Initial 

Retail Installment Contract-MN Not for use in transactions secured by a dwelling.
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
Bankers Systems®
Page 1 of 5

EXHIBIT 1

## Itemization of Amount Financed

| | | |
|---|---|---|
| a. | **Cash Price** of Vehicle, etc. (incl. sales tax of $ 1,414.25 ) | $ 21,004.25 |
| b. | Trade-in allowance | $ N/A |
| c. | Less: Amount owing, paid to (includes k): N/A | $ N/A |
| d. | Net trade-in (b–c; if negative, enter $0 here and enter the amount on line k) | $ N/A |
| e. | Cash payment | $ 200.00 |
| f. | Clean Vehicle Tax Credit | $ N/A |
| g. | Deferred down payment | $ 0.00 |
| h. | Other down payment (describe) (Upfront Nonrefundable) Shipping | $ 690.00 |
| i. | **Down Payment** (d+e+f+g+h) | $ 890.0 |
| j. | **Unpaid balance of Cash Price** (a–i) | $ 20,114.25 |
| k. | Financed trade-in balance (see line d) | $ 0.00 |
| l. | Paid to public officials: | |
|   i | Total Fees | $ 281.50 |
|   ii | N/A | $ 0.00 |
|   iii | N/A | $ 0.00 |
| m. | Insurance premiums paid to insurance company(ies) | $ 0.00 |
| n. | Gap Waiver paid to Seller | $ N/A |
| o. | Service Contract, paid to: N/A | $ N/A |
| p. | Optional electronic transfer fee, paid to: N/A | $ N/A |
| q. | To: (Upfront Nonrefundable) Shipping | $ 690.00 |
| r. | To: N/A | $ N/A |
| s. | To: N/A | $ N/A |
| t. | To: N/A | $ N/A |
| u. | To: N/A | $ N/A |
| v. | To: N/A | $ N/A |
| w. | To: N/A | $ N/A |
| x. | To: N/A | $ N/A |
| y. | To: N/A | $ N/A |
| z. | To: N/A | $ N/A |
| aa. | **Total Other Charges** mts Paid (k thru) | $ 971.50 |
| bb. | **Prepaid Finance Charge** | $ N/A |
| cc. | **Amount Financed** (j+aa-b) | $ 21,085.75 |

We may retain or receive a portion of any amounts paid to others.

[This area intentionally left blank.]

## Insurance Disclosures

**Credit Insurance. Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision.** We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below **only** the coverages you have chosen to purchase.

**Credit Life**
☐ Single   ☐ Joint   ☐ None
Premium $ N/A    Term N/A
Insured N/A

**Credit Disability**
☐ Single   ☐ Joint   ☐ None
Premium $ N/A    Term N/A
Insured N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

By: _____N/A_____ N/A DOB
Date _____N/A_____

By: _____N/A_____ N/A DOB
Date _____N/A_____

By: _____N/A_____ N/A DOB
Date _____N/A_____

**Property Insurance. You must insure the Property. You may purchase or provide the insurance through any insurance company reasonably acceptable to us.** The collision coverage deductible may not exceed $ 1,000 . If you get insurance from or through us you will pay $ N/A for N/A of coverage.

This premium is calculated as follows:
☐ $ N/A  Deductible, Collision Cov.  $ N/A
☐ $ N/A  Deductible, Comprehensive  $ N/A
☐ Fire-Theft and Combined Additional Cov.  $ N/A
☐ N/A  $ N/A

Liability insurance coverage for bodily injury and motor vehicle damage caused to others is not included in this Contract unless checked and indicated.


Initial

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☐ **Service Contract**
Term: N/A
Price: $ N/A
Coverage: N/A

☐ **Gap Waiver** or ☐ **Gap Insurance**
Term: N/A
Price: $ N/A
Coverage: N/A

☐ **Cosmetic Protection**
Term: N/A
Price: $ N/A
Coverage: N/A

Signed by: [signature]
By: Afnan Mohammed Husain    Date: 10/24/2024

By: N/A    Date: N/A

By: N/A    Date: N/A

## Additional Terms of the Sales Agreement

**Definitions.** "Contract" refers to this Retail Installment Contract and Security Agreement. The pronouns "I" and "your" refer to each Buyer signing this Contract, and any guarantors jointly and individually. The pronouns "we", "us" and "our" refer to the Seller and any entity to which it may transfer this Contract. "Vehicle" means each motor vehicle described in the *Description of Property* section. "Property" means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. You also agree that the purchase of the Property on credit takes place at the Seller's licensed location identified at the top of page 1 of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The "Total Sale Price" is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, you have a right to a refund of the excess charge. If you agree, or if you do not make a timely request for a refund, we will first apply the refund amount to reduce the principal balance, and when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law. No refund of credit life or credit disability insurance premiums will be paid if the amount of the refund would be less than $5.00, unless otherwise provided by law.

**Returned Payment Charge.** If you make any payment required by this Contract that is returned or dishonored, you agree to pay a fee of $30.00 if permitted by law.

**Governing Law and Interpretation.** This Contract is governed by the law of Minnesota and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if you fail to perform any obligation that you have undertaken in this Contract, except as prohibited by law.

If you default, you agree to pay court costs, attorneys' fees, and fees for repossession, repair, storage and sale of the Property securing this Contract. If this Contract is subject to the Minnesota Motor Vehicle Retail Installment Sales Act, the amount of attorneys' fees will not exceed 15% of the unpaid debt after default and referral to an attorney not a salaried employee of ours.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

- We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
- We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the rate described in the *Payment* section until paid in full.
- We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
- We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.
- We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.
- Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy to the extent permitted by law. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

Initial 

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You must pay this Contract even if someone else has also signed it.
- We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- We may release any security and you will still be obligated to pay this Contract.
- If we give up any of our rights, it will not affect your duty to pay this Contract.
- If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- You agree not to remove the Property from the U.S. without our prior written consent.
- You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- You will pay all taxes and assessments on the Property as they become due.
- You will notify us with reasonable promptness of any loss or damage to the Property.
- You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to maximum deductible amount indicated in the *Insurance Disclosures* section or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance or name us as loss payee, we may obtain insurance to protect our interest in the Property. We will notify you if we do so. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the rate described in the *Payment* section until paid in full. However, if this Contract is assigned and the Assignee is not a financial institution as defined by Minn. Stat. § 47.59, this amount will earn finance charges from the date paid at 8% per year or, at our option, the highest rate the law allows.

**Gap Waiver or Gap Insurance.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You may have the option of purchasing Gap Waiver or Gap Insurance to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Insurance agreements. Any Gap Waiver that you buy from us is part of this Contract.

## Notices

Note. If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. **NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Sí compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

## Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payment it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

| N/A | N/A |
|---|---|
| By: | Date |

Signature of Third Party Owner (NOT the Buyer)

[This area intentionally left blank.]


Initial

---

Retail Installment Contract-MN Not for use in transactions secured by a dwelling.
©2024 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.
Bankers Systems®
Page 4 of 5

## Acknowledgment for Electronic Signatures

[X] **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## Signature Notices

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.

## Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

By: _Afnan Mohammed Husain_ (Signed) — 10/24/2024
By: N/A — N/A
By: CARVANA, LLC (Signed) — 10/24/2024

**Notice to Buyer.** (1) Do not sign this Contract before you read it or if it contains any blank spaces. (2) You are entitled to a completely filled-in copy of this Contract.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

**IMPORTANT. THIS MAY BE A BINDING CONTRACT AND YOU MAY LOSE ANY DEPOSITS IF YOU DO NOT PERFORM ACCORDING TO ITS TERMS.**

**Buyer**
By: Afnan Mohammed Husain (Signed) — 10/24/2024
By: N/A — N/A
By: CARVANA, LLC — N/A

**Seller**
By: CARVANA, LLC (Signed) — 10/24/2024

**Assignment.** This Contract and Security Agreement is assigned to N/A, the Assignee, phone N/A. This assignment is made under the terms of a separate agreement made between the Seller and Assignee.
[ ] This Assignment is made with recourse.

**Seller**
By: N/A — N/A

[This area intentionally left blank.]

Initial 

*THIS IS A COPY — The Authoritative Copy of this record is held at NA3.docusign.net*

Docusign Envelope ID: [redacted]
Case 25-50505    Doc 50    Filed 04/28/25    Entered 04/28/25 10:47:50    Desc Main
Document    Page 8 of 17

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

# ARBITRATION AGREEMENT | WAIVER OF PURCHASER'S RIGHT TO SUE

### SUMMARY OF ARBITRATION AGREEMENT

This document, called "Arbitration Agreement," is part of the Contracts, defined below, that you and we are entering into. In this document, you and we are both promising to accept arbitration for a wide range of our disputes. Certain kinds of disputes are not covered; the Arbitration Agreement states which kinds those are. The Arbitration Agreement covers every other kind of dispute that might come up between you and us (by "us," we are including any company to which we might assign your Contracts and any company hired to enforce the Contracts). A dispute covered by the Arbitration Agreement could still be resolved in court but only if you and we both decide to use the court. If either you or we decide that the dispute should be resolved by arbitration, then the Arbitration Agreement obligates both of us to accept arbitration.

Arbitration is a formal process for resolving disputes that is different from court. An arbitration decision is binding on both sides, but the rules for the process are often more efficient than lawsuits in court.

This Arbitration Agreement means that (except for the disputes that are not covered, as mentioned above), you and we are both giving up our right to go to court to resolve disputes between us. In arbitration, our dispute will be decided by a neutral arbitrator and not by a judge or jury. As a result, **for the disputes that this Arbitration Agreement covers, you and we are both waiving our rights to a jury trial**. A dispute could end up before a jury if both you and we decide to use a court and a jury; but the Arbitration Agreement allows either you or we to insist on arbitration where there will be no jury.

If you or we choose arbitration, only our individual claims will be arbitrated. **In this Arbitration Agreement, you and we are waiving rights to obtain relief on a class basis or in a representative capacity**.

Arbitrator decisions are enforceable, just like a court order. Unlike court orders, these decisions are subject to very limited review by a court. Once a decision is made it is final, except in very limited circumstances.

In arbitration you are entitled to a fair hearing, but arbitration procedures are generally simpler and more limited than rules that apply in court. The disputes between you and us described below will be governed by the American Arbitration Association Consumer Arbitration Rules, including such rules regarding the arbitrability of any claim or counterclaim, and including, where applicable, the American Arbitration Association Supplementary Rules for Multiple Case Filings.

This Arbitration Agreement gives you a time-limited option to opt out from your promise to accept arbitration. If you opt out, we will also not be obligated to accept arbitration, and certain other promises in this Arbitration Agreement will also end, as noted below. **To choose this option you must notify us in the 30 days after you sign this Arbitration Agreement, and you must follow the instructions under the heading "Your Limited Option to Opt Out Of Certain Provisions." You will need to act by that 30-day deadline or you lose this option**.

This is only a summary. As with all legal agreements, **please read the entire Arbitration Agreement carefully before you sign**. This Arbitration Agreement will substantially affect your rights.

1. **Definitions.** For the purposes of this Arbitration Agreement, the following terms shall have the following meanings:

   1.1. "Agreement" means this Arbitration Agreement.

   1.2. "Claims" has the broadest reasonable meaning, and means any claims, counterclaims, crossclaims, third-party claims, disputes, or controversies between You and Us, whether on an individual or a class basis, whether arising in contract, tort, equity, pursuant to statute, regulation, ordinance, or otherwise, relating to or arising from any of the following:

   (a) the Vehicle, its features, mileage, condition, or accident history;
   (b) advertisements, promotions, or oral or written statements regarding the Vehicle or the Contracts;
   (c) registration of, title to, or liens on the Vehicle;
   (d) delivery or pick-up of the Vehicle;
   (e) Your purchase, sale, or trade-in of the Vehicle;
   (f) the Contracts, and duties or relationships arising therefrom;
   (g) financing terms, credit applications, or credit reporting;
   (h) origination or servicing of the Contracts;
   (i) any goods and services incidental to the Contracts or the Vehicle, such as warranty service, extended vehicle service, or insurance coverage;
   (j) the collection of amounts owed by You, or the repossession of the Vehicle;
   (k) the rescission or termination of the Contracts; or
   (l) the collection or disclosure of Your personal information.

   The definition of "Claims" in this Agreement is not intended to determine whether a particular dispute includes a single Claim or multiple Claims.

   1.3. "Contracts" means the Retail Purchase Agreement (in Texas, the Buyer's Order), Retail Installment Contract and Security Agreement (in California, the Conditional Sales Contract and Security Agreement), Loan Agreement and Disclosure Statement, Loan and Security Agreement, Carvana Limited Warranty, GAP Addendum, Vehicle Purchase Agreement, Vehicle Return Agreement, and/or any contract You signed with Us that refers to or incorporates this Arbitration Agreement.

   1.4. "Parties" collectively means You and Us. "Party" individually means You or Us.

   1.5. "Us/We/Our" means Carvana, LLC, any purchaser, assignee, or loan servicer of the Contracts, including, but not limited to, Bridgecrest Acceptance Corporation, Bridgecrest Credit Company, LLC, and the parent companies, subsidiaries, affiliates, predecessors, successors, officers, directors, and employees of any of them. "Us/We/Our" also means any warranty servicer or other party providing products or services to the Vehicle in connection with or incidental to the Contracts, and the parent companies, subsidiaries, affiliates, predecessors, successors, officers, directors, and employees of any of them.

   1.6. "Vehicle" means any vehicle identified in the Contracts, vehicles You buy from Us, vehicles You sell or trade-in to Us, vehicles We finance or otherwise facilitate the purchase of, and vehicles regarding which We offer any services or products.

**1.7.** "**You/Your**" means you, any of your heirs or personal representatives, and any other person acting on your behalf or on whose behalf you are acting with respect to this transaction or disputes arising from or relating to this transaction.

**1.8.** "**AAA**" means the American Arbitration Association. "**AAA Rules**" means any rules adopted by AAA that are applicable to a given arbitration, by operation of this Agreement or pursuant to a decision by the AAA or an arbitrator in the manner permitted by this Agreement. "**Consumer Rules**" means the American Arbitration Association Consumer Rules. "**Document Procedures**" means the American Arbitration Association Procedures for the Resolution of Disputes through Document Submission. "**Multiple Case Rules**" means the American Arbitration Association Supplementary Rules for Multiple Case Filings.

2. **Promise to Arbitrate.** Except as stated below in Section 2.1, You or We can choose to demand that a Claim shall be resolved through binding and final arbitration instead of through court proceedings, and You and We promise to accept that demand.

   2.1. **Exceptions**

   a. **Small Claims Exception.** If You file a Claim(s) in an individual capacity in small claims court or Your state's equivalent court, We cannot demand that You arbitrate those Claims. If We file a Claim(s) in small claims court or Your state's equivalent court, You cannot demand that We arbitrate those Claims. But if any of Your Claims or Our Claims are transferred or removed to a different court, then You or We can demand arbitration of those Claims that have been transferred or removed.

   b. **Active Service Member Exception.** You are not obligated to accept Our arbitration demand if You are, at the time of the demand, a "covered member" of the armed forces, as that term is defined in the Military Lending Act, or a dependent of a covered member; or if You were a covered member or a dependent of a covered member at the time You entered this Agreement.

   c. **Self Help Exception.** You and We acknowledge that this Agreement covers only Claims that are adjudicated. To the extent permitted by law, You or We can exercise self-help remedies, such as non-judicial repossession and sale of collateral You have given as security for amounts owed under the Contracts, or setoff rights against amounts owed, without obtaining arbitration on these remedies beforehand.

   d. **Conflicting Law Exception.** If applicable law prohibits the application or enforcement of this Agreement with respect to a Claim (or portion of a Claim), You and We will not be obligated to accept arbitration of that Claim (or portion of that Claim). This exception will not prevent or limit Your or Our obligation to accept arbitration of any other Claim.

   2.2. **New Claims; No Waiver.** Even if all Parties have elected to litigate a Claim in court, You or We may demand arbitration of that Claim (and any new Claim(s)), if any new Claim is asserted in that or any other lawsuit, and the other Party will be obligated to accept such arbitration demand. A new Claim for the purposes of this Section 2.2 includes any request for new or additional relief. If a Claim was previously asserted on an individual basis and is then modified or amended to seek relief on a class or representative basis, the Claim, alongside the request to litigate on a class or representative basis, will constitute a new Claim for purposes of this Section 2.2.

You and We agree that no conduct by either Party in the course of any litigation involving You or Us will waive any rights under this Agreement. In addition, no waiver of any provision of this Agreement will be effective or enforceable unless it is expressed in a writing signed by the Party that is waiving its rights.

2.3. <u>Individual Claims Only</u>. Claims may be submitted to arbitration on an individual basis only. Notwithstanding anything contained in this Agreement, a Claim cannot be arbitrated on a class basis, in a representative capacity, on behalf of the public (as a private attorney general, or otherwise), or on behalf of any other person. The arbitrator shall have no authority to combine or aggregate similar claims, to conduct any class, private attorney general, or representative proceeding, or to make an award to any person or entity not a named party in the arbitration. **The Parties acknowledge and agree that You and We are waiving any right to (1) participate in a class adjudication in arbitration, either as a class representative, class member, or class opponent; (2) act as a private attorney general in arbitration; or (3) otherwise seek relief in a representative capacity.**

You and We acknowledge and agree that nothing in this Agreement, including this Section 2.3, limits the applicability of the American Arbitration Association Supplemental Rules for Multiple Case Filings.

If, notwithstanding the express waivers in this Section 2.3, it is determined that You have a non-waivable right to seek a public injunction, to act as a private attorney general with respect to claims arising from or related to alleged injuries to person(s) that are not a named party to the arbitration, or to assert a Claim in a representative capacity with respect to claims arising from or related to alleged injuries to person(s) that are not a named party to the arbitration, then You may pursue such relief in court, but only after all other Claims and prayers for relief are first adjudicated in arbitration. During the pendency of any such arbitration the action in court shall be stayed.

3. <u>YOUR LIMITED OPTION TO OPT OUT OF CERTAIN PROVISIONS</u>. Under this Section 3, You may opt out of Section 2 above, the provisions that obligate You and Us to accept arbitration on demand in many circumstances. If You exercise this option in accordance with this Section 3, neither You nor We will have the right to require arbitration of any Claims. Your exercise of the option under this Section 3 will not affect any other aspect of this Agreement or Your Contracts. For You to exercise this option, We must <u>receive</u> a signed writing (the "Opt-Out Notice") from You within 30 days of the date You sign this Arbitration Agreement, stating that You are opting out of Section 2 of the Agreement. The Opt-Out Notice must include Your name, address, the Vehicle Identification Number ("VIN") of any vehicle identified in the Contracts, and the date you signed the Arbitration Agreement. You must email the notice to arbitrationoptout@carvana.com. Your Opt-Out Notices must be <u>received</u> by 11:59pm, Arizona time, on the 30th day from the date You signed this Arbitration Agreement. If the Opt-Out Notice is sent on Your behalf by a third party, then such third party must include evidence of his or her authority to submit the Opt-Out Notice on Your behalf. If You exercise the option under this Section 3, opting out of Section 2 will not opt You out of any other arbitration agreement between You and Us.

4. <u>Arbitrability Delegated to Arbitrator</u>. Any dispute relating to the validity, enforceability, interpretation, or scope of this Agreement, the arbitrability of any Claim, or other gateway issues of arbitrability, or any alleged waiver of this Agreement shall be exclusively resolved by the arbitrator and not by a court.

Docusign Envelope ID: [REDACTED]
Case 25-80059    Doc 66    Filed 04/28/25    Entered 04/28/25 10:47:50    Desc Main
Document    Page 12 of 17

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

5. **Arbitration Administrator.** Any arbitration shall be administered by the American Arbitration Association ("AAA"). If, for any reason, AAA is unable, unwilling, or ceases to be the administrator, then You will have twenty calendar days to choose a substitute administrator subject to Our approval, which may not be unreasonably withheld. If You do not select a new administrator within that period, then We will do so.

6. **Arbitration Procedure.** Any arbitration shall be resolved by a single arbitrator in accordance with (1) the Federal Arbitration Act ("FAA"); (2) this Agreement; and (3) the AAA Rules in effect at the time the arbitration is commenced, including AAA Rules regarding the arbitrability of any claim or counterclaim, and including the Consumer Rules and, to the extent applicable, the Document Procedures and/or the Multiple Case Rules. You and We both agree that for a dispute qualifying for the Document Procedures, neither Party shall have the right to a hearing outside the Document Procedures, though either Party may ask the arbitrator to decide that such a hearing is necessary. The AAA Rules may be obtained at many of AAA's offices nationwide, or online at www.adr.org/Rules. In the event of any inconsistency between the AAA Rules and this Agreement, this Agreement shall prevail.

To begin an arbitration proceeding, You must send to Carvana a demand for arbitration describing the nature and basis of Your claims, the relief sought, and (if the demand is submitted by someone other than You) Your express authorization to bring the arbitration demand. The demand must be sent by FedEx, UPS, or USPS to Attn: Carvana Legal, 300 E. Rio Salado Pkwy, Tempe, AZ 85281. You must also contact AAA and follow its rules and procedures for commencing an arbitration. In any demand for arbitration filed with AAA, the business address for Carvana, LLC, and for any Carvana affiliate shall be described as 300 E. Rio Salado, Tempe, AZ 82581.

7. **Arbitration Hearing Location.** Unless prohibited by law, if the arbitrator schedules an oral arbitration hearing, then any such hearing shall be conducted virtually unless the arbitrator determines that a fair hearing requires that the hearing be conducted live. If the arbitration hearing is conducted live, then, unless the Parties agree to a different location or the AAA determines otherwise pursuant to its Multiple Case Rules, the arbitration hearing shall take place in the federal judicial district of Your residence.

8. **Special Procedures for Multiple Case Filings.** If twenty-five (25) or more similar claims are asserted against Us by the same or coordinated counsel or are otherwise coordinated, You understand and agree that the resolution of your dispute might be delayed. You also agree to the following coordinated bellwether process and application of the Multiple Case Rules. Counsel for the claimants and counsel for Us shall each select five (5) cases (per side) to proceed first in individual arbitration proceedings as part of a bellwether process. The remaining cases shall not be filed or deemed filed in arbitration nor shall any AAA fees be assessed in connection with those cases until they are selected to proceed to individual arbitration proceedings as part of a bellwether process. If the Parties are unable to resolve the remaining cases after the conclusion of the initial ten (10) proceedings, each side shall select another five (5) cases (per side) to proceed to individual arbitration proceedings as part of a second bellwether process. The remaining cases shall not be filed or deemed filed in arbitration nor shall any AAA fees be assessed in connection with those cases until they are selected to proceed to individual arbitration proceedings as part of a bellwether process. A single arbitrator shall preside over each case. This staged process shall continue, consistent with the parameters identified above, until all the Claims included in these coordinated filings, including Your case, are adjudicated or otherwise resolved. The statute of limitations and any filing fee deadlines

shall be tolled for claims subject to this Section 8 from the time Your case is filed until the time Your case is selected for a bellwether process, withdrawn, or otherwise resolved.

9. **No Indirect Damages.** The arbitrator has no authority to award consequential, incidental, or punitive damages, damages for loss of use, loss of time, loss of profits or income, or any other similar damages not measured by a Party's actual direct damages, except as may be required by law.

10. **Compelling Arbitration.** If You or We file a lawsuit in court asserting Claim(s) that are subject to arbitration and the other Party files a motion to compel arbitration that is granted, then it will be the responsibility of the Party prosecuting the Claim(s) to commence the arbitration proceeding.

    10.1. **Fee-shifting for Compelling Arbitration.** If You file a motion to compel arbitration that is granted, then You are entitled to an award of Your reasonable attorneys' fees incurred to obtain such relief, as determined by the arbitrator. Your attorneys' fee award referenced in this Section 10.1 shall be immediately collectible. If We file a motion to compel arbitration that is granted, then We are entitled to an award of Our reasonable attorneys' fees incurred to obtain such relief, as determined by the arbitrator. Our attorneys' fee award referenced in this Section 10.1 is only collectible as a setoff against a final arbitration award, if any, that You obtain against Us.

11. **Attorney Fees.** To the greatest extent permitted by applicable law, the Parties agree that the arbitrator shall take into account the Parties' settlement offers as well as any settlement demands in relation to any relief ultimately obtained through arbitration in evaluating any potential award of attorneys' fees. This includes determining whether any Party prevailed in the arbitration, and if so, which Party, as well as the reasonableness of any request for attorneys' fees. The arbitrator shall also be entitled to apply any statute, rule, regulation, or other authority providing for an award of and/or prohibiting the recovery of attorneys' fees, costs, or expenses, in whole or in part, based upon the Parties' settlement offers or demands that could be applied by a court under applicable law. The arbitrator is also authorized to award attorneys' fees if it determines that any Claim was frivolous, brought or maintained for an improper purpose, and/or brought or maintained in bad faith.

12. **Judgment; Effect of Arbitration Award.** Judgment on the arbitrator's award may be entered in any court with jurisdiction. Otherwise, except as may be required by law, neither a Party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both Parties. No arbitration award involving the Parties will have any preclusive effect as to issues or claims in any dispute involving anyone who is not a Party to the arbitration. Nor will an arbitration award in prior disputes involving other parties have preclusive effect in an arbitration between the Parties to this Agreement.

13. **Notice and Cure; Special Payment.** Prior to initiating a Claim, You may send Us a written Claim Notice, by email to Legal@Carvana.com with the subject line "Claim Notice," that describes the basis of Your Claims and the amount You would accept in resolution of the Claims, and a reasonable opportunity, not less than 30 days, to resolve the Claims. If (i) You submit a Claim Notice in accordance with this Section 13; (ii) You cooperate with Us by promptly providing any information We reasonably request; (iii) We refuse to provide You with the relief You request; and (iv) an arbitrator subsequently determines that You were entitled to such relief or greater relief, not counting attorneys' fees or arbitration costs, You will be entitled to a minimum award of at least $7,500 (not counting any fees to which You are entitled under Section 11) plus Your reasonable attorneys' fees and witness costs.

14. **Finality of Arbitration.** The arbitrator's decision on all matters, including any interim or final awards, will be final and binding except as may be provided in the FAA.

Docusign Envelope ID: [redacted]
Case 25-80808    Doc 80    Filed 04/28/25    Entered 04/28/25 10:47:50    Desc Main
Document    Page 14 of 17

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

15. **Applicable Law.** Because the Contracts involve a transaction in interstate commerce, the FAA governs this Agreement and any arbitration pursuant to this Agreement to the exclusion of any state law inconsistent with the FAA. The arbitrator shall apply applicable statutes of limitations. Except as otherwise stated in this Agreement, the arbitrator is authorized and given the power to award all remedies that would apply if the action were brought in court. The arbitrator is not required to apply federal or state rules of civil procedure or evidence.

16. **Acknowledgement of Consideration and Integration.** You and We each acknowledge and agree that this Agreement is supported by valuable consideration, including the promises and consideration exchanged pursuant to the Contracts. You and We each acknowledge and agree that this Agreement is part of the Contracts, and that each Party regards the consideration contained within this Agreement as integral to the decision to enter the Contracts.

17. **Severability.** If any provision of this Arbitration Agreement is found to be invalid or unenforceable, then that specific provision shall be of no force and effect and shall be severed, but the remainder of this Agreement shall continue in full force and effect. If a court or arbitrator limits or voids any portion of Section 2.3 captioned "Individual Claims Only" in any proceeding, then, subject to the right to appeal such a decision, the class, collective, representative and/or private attorney general action must be litigated in a civil court of competent jurisdiction and not arbitration, but the portions of Section 2.3 captioned Individual Claims Only that are enforceable shall be enforced in arbitration.

18. **Survival.** This Agreement survives Your full payment under the Contracts, termination or rescission of the Contracts, and to the extent permitted by law, Your or Our bankruptcy.

19. **Conflicts.** In the event of any conflict or inconsistency between this Agreement and the Contracts, this Agreement shall prevail. Any right of any Party to demand arbitration on an individual basis under this Agreement will prevail over any prior agreement that is inconsistent with that right.

**BY SIGNING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTAND, AND EXPRESSLY AGREE TO THE ABOVE AGREEMENT. THE AGREEMENT MAY SUBSTANTIALLY LIMIT YOUR RIGHTS IN THE EVENT OF A DISPUTE. YOU ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT.**

_____    _____
Customer Signature                  Co-Signer Signature

Date: 10/23/2024 _____    Date: _____

By: _____
    Authorized Signature

Minnesota Department of Public Safety
Driver and Vehicle Services
445 Minnesota St, St Paul, MN 55101
**Web**: drive.mn.gov  **Phone**: 651-297-2126
**TTY** for hearing impaired customers: 651-282-6555

Pre-Sorted
First-Class Mail
U.S. POSTAGE
PAID
Permit No. 171
Twin Cities MN

**Notification of Lien Perfection**

**Retain this document** – See reverse side of this form for removing this lien.

| Plate no. | Make | Title no. | VIN |
|---|---|---|---|
| RRM424 | HOND | 23373789-1 | 7FARW2H85JE073819 |

| Model Yr. | Model | Security Date | Lien Holder |
|---|---|---|---|
| 18 | LLCRV | 10/24/24 | 1ST SECURED PARTY |

HUSAIN AFNAN MOHAMMED
1220 BROOK AVE SE UNIT 313
MINNEAPOLIS MN 554147545

T17 P3\*\*\*\*\*\*AUTO\*\*MIXED AADC 550
CARVANA
PO BOX 29002
PHOENIX AZ 85038-9002

EXHIBIT 2

### STATE OF MINNESOTA
### CERTIFICATE OF LIEN RELEASE
### TO A MOTOR VEHICLE

*This security interest is hereby released on* _____

*Date*

**X** _____    _____

*Signature of Authorized Agent*    *Title*

## IMPORTANT – DO NOT DESTROY

*This Certificate of Lien Release must be attached to the original Certificate of Title to establish clear ownership.*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | CHAPTER 7 CASE |
| | CASE NO. 25-30895 |
| Afnan Mohammed Husain | |
| | UNSWORN DECLARATION FOR PROOF |
| Debtor(s). | OF SERVICE |

    James Ockwig, employed by Wilford, Geske & Cook, P.A., attorneys licensed to practice law in this Court, with office address at 7616 Currell Boulevard, Suite 200, Woodbury, MN 55125, declares that on April 28, 2025, I served the annexed Amended Affidavit of Carvana LLC to each person referenced below, a copy thereof by enclosing the same in an envelope with first class postage prepaid and depositing same in the post office at Woodbury, Minnesota addressed to each of them as follows:

Afnan Mohammed Husain
PO Box 4272
Mankato, MN 56002

and delivered by e-mail notification under CM/ECF on the day efiled with the Court to each of them as follows:

Michael S. Dietz

The Office of the United States Trustee

And I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: April 28, 2025

                                            /e/ James Ockwig
                                            James Ockwig