## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MINNESOTA

---

In re: Afnan Mohammed Husain,                                    Bky No. 20-30895
                                                                            Chapter 7

Debtor

---

## DECLARATION OF MARSHALL JACKSON

---

I, Marshall Jackson, make this declaration under penalty of perjury in support of Gardner Investments, Inc.'s Motion for Relief from the Automatic Stay.

1. Gardner Investments, Inc. is the owner of a multi-unit residential building at 1905 Stevens Avenue, Minneapolis, Minnesota, 55403.  I am the President of Gardner Investments.

2. In October of 2024 Debtor Afnan Husain entered into a written lease with Gardner Investments for the term of approximately one year (specifically October 24,2024 through November 30, 2025) in Apt. 203 of 1905 Stevens Avenue ("the Apartment.") A true copy of the executed lease is attached as Exhibit A.

3. Since the execution of the lease and currently, Debtor has and is residing in the Apartment.

4. Debtor failed to pay rent for January of 2025 and Gardner Investments brought an eviction action against the Debtor on January 27, 2025 in Hennepin County District Court (Housing Division) [4th District Court File No. 27-CV-HC-25-818 (the "Eviction Action.")] See a true copy of the Housing Court Complaint attached as Exhibit B.

1

5. Multiple pre-trial motions were filed by Debtor in the Eviction Action including a motion to dismiss because the Debtor's rights in the Apartment had allegedly been assigned to an entity called the "Aurora Living Trust." Debtor has never provided any evidence to me or my attorney nor, so far as I know, any court, of the existence of the "Aurora Living Trust."

6. On March 28, 2025, Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Minnesota.

7. Debtor purposefully failed to notify myself and my attorney pursuing the eviction action about the bankruptcy filing. Debtor was apparently hoping that she would win the eviction proceeding, knowing that if she did not, she could always let the housing court know that she had already filed bankruptcy and halt any further attempt to evict her. I had no independent knowledge of the bankruptcy filing as of March 28.

8. A hearing in the Eviction Action was held on April 7, 2025 in Hennepin County Housing Court. As a result of that hearing, on the same day the Hennepin County District Court Referee entered an order for judgment in favor of Gardner Investments dispossessing Debtor and denying all affirmative defenses to the Eviction Action brought by the Debtor, including her assertion that she could not be evicted because she had assigned the Lease to a separate legal entity. A true copy of that order and judgment is attached as Exhibit C.

9. On April 8, per my request, Hennepin County issued a Writ of Recovery.

10. Only after she lost the Eviction Action did Debtor inform the District Court that he had filed bankruptcy on the Petition Date.

11. As a result of the notice of bankruptcy filing given to the Hennepin County Housing Court, on April 10 that court issued an order vacating its order for possession and quashed the writ of recovery. A true copy of that order is attached as Exhibit D.

2

12. In addition to January rent, prior to the bankruptcy filing, the Debtor failed to pay rent for

February and March.  See summary of pre-petition charges attached as Exhibit E showing a

total amount owed of $2,456.20.. Debtor has also failed to pay post-petition rent and charges

for April and May. Currently, the Debtor owes post-petition rent and related costs (not

including any applicable attorney's fees) in the amount of at least $1,672.80. See summary of

post-petition charges attached as Exhibit F

I have read the above and it is my statement made of firsthand knowledge.

Date: May 14, 2025

Marshall Jackson

# EXHIBIT A – LEASE

Filed in District Court
State of Minnesota
1/27/2025 4:03 PM



**Gardner Investments, Inc.**

1905 Stevens Ave • Suite B • Minneapolis, MN 55403
(651) 777-3612

# 1. Residency and Financials

## 1.1 PARTIES AND OCCUPANTS

This Lease Contract is between you, the undersigned Resident and Co-signer(s):

Afnan M. Husain

and us, the Owner / Agent:

Gardner Investments, Inc.

1905 Stevens Ave
Suite B
Minneapolis, MN 55403

You have agreed to rent the property located at:

1905 Stevens Ave. SO.
203
Minneapolis, MN 55403

for use as a private residence only. The terms "you" / "your" / "Tenant" / "Lessee" refer to all Residents and Co-signer listed above. The terms "we" / "us" / "our" / "Landlord" / "Lessor" / "Management" refer to the Owner / Agent listed.

The apartment will be occupied exclusively by the Resident(s) listed above. The Landlord must approve unauthorized occupants living in the premises for longer than 48 consecutive hours.

## 1.2 LEASE DURATION

The terms of this tenancy shall commence on 10/24/2024 and end on 11/30/2025 . The Landlord reserves the right to change the terms and condition of the tenancy at any time commencing with the ending date of this lease.

## 1.3 RENTS AND CHARGES

You shall pay a net

| | |
|---|---|
| Rent | $760.00 |
| Liability to Landlord Insurance | $10.50 |
| Admin Fee - Liability to Landlord Insurance | $4.50 |
| **Total:** | **$775.00** |

per month for rent which is comprised of Unit Rent, Pet Rent and Parking/Garage (if applicable).

The first month's rent and/or prorated rent shall be due prior to move-in unless specified as other in writing by Landlord. In addition Tenant shall pay the one time charges of

| | |
|---|---|
| Tenant Security Deposits | $755.00 |
| **Total:** | **$755.00** |

at move in.

Every month thereafter, Tenant must pay rent on or before the 1st day of each month The following late fees will apply for payments made after the 1st day of the month:

Late fee rule: 8 Percent of All Charges There will also be a $50.00 administrative service fee added to the account after the 9th day of the month. Tenant acknowledges that the administrative fee is not imposed as a late fee, but as payment to the Landlord to offset administrative expenses and other costs in dealing with the unpaid rent and other monies not paid on time. The administrative fee shall in no way be deemed a late fee.

Filed in District Court
State of Minnesota
1/27/2025 4:03 PM

A charge of $45 will apply for every returned check or rejected electronic payment plus the amount of any fees charged to the Landlord by any financial institution as a result of the check not being honored, plus any applicable late fee charges. If Tenant does not pay rent on time, Tenant will be delinquent and all remedies under this Lease Contract will be authorized.

There shall be a $15.00 processing fee added to each check or money order tendered, no cash shall be accepted.

We may change the terms of this lease in accordance with applicable law, including rent increases and other modifications to the terms of the contract.

## 1.4  SECURITY DEPOSIT

The total security deposit (performance deposit / damage deposit) at the time of execution of this Lease Contract for all Residents in the apartment is $755.00 , due on or before the date this Lease Contract is signed. Landlord will hold the security deposit for the term of the tenancy and, upon termination of the tenancy, reserve the right to use the security deposit, or portions thereof, to cover any charges related to the performance of this Lease Contract, including, but not limited to: cleaning, repair of damages, unpaid rent, late fees, and returned check fees.  The security deposit less any deductions will be returned to the Tenant after move out in accordance with Minnesota Statute 504B.

## 1.5  UTILITIES

Landlord will pay for the following utilities:

 Heat and water trash recycling

Tenant agrees to promptly pay all bills for utilities and services Tenant is responsible for on the premises.  Tenant agrees not to waste or abuse any utilities or services furnished by Landlord, or permit guests or others to do so.  Windows and storm windows must be kept in a closed position from November 1st to April 1st and Tenant supplied air conditioner units must be removed during this time.  During this time, the windows may be opened for a five minute period of time to freshen the Apartment.  If damage results from a window opened longer than this time, the Tenant will be responsible for the damage.  Tenant may not interfere in any manner with the portion of either heating or lighting apparatus in the Apartment or building.

## 1.6  INSURANCE

RENTER'S INSURANCE: Resident agrees to purchase and maintain liability insurance as it pertains to the Lease agreement between the parties that includes a minimum of $50,000 in liability coverage, Tenants/Renters/Homeowners Insurance Form HO-4, with an insurance carrier duly
licensed in the State of the location of the leased premises, during the entire term of this Lease and any subsequent periods to protect against injuries or property damage and rent loss. Resident must purchase and provide Management with proof of renters insurance in accordance with
the terms and conditions of this Lease in the form of a Certificate of Insurance.

Tenant acknowledges and agrees to Management Insuring the premises if Tenant has not provided proof of insurance at the signing of the lease, and Tenant agree to pay for this insurance plus a $4.50 administration fee monthly until the Tenant provides proof of their own insurance policy.  Tenant agrees to pay the insurance and administration fee on a monthly basis with their rent payment. This requirement is in place to protect Management and the Owner. Resident may bring no suit or claim against Management for a failure by another resident to have liability insurance that might compensate Resident for damage or loss caused by another Resident. Resident is advised that Management's liability insurance does not protect Resident or Residents personal property against loss or
damage caused by loss or casualty or the wrongful acts of any third party, or provide Resident with moving expenses or temporary lodging in the event of any accident or casualty that interrupts Resident's use of the Apartment/Townhome or requires Resident to vacate.

FLAME FREE ENVIRONMENT:  Tenant agrees that they will not use or allow in their premises the use of any flamed device including but not limited to; candles, incense, lighters, torches, and burners.  Violation of this requirement will result in a Tenant Infraction and a $200.00 fine.

## 1.7  KEYS AND LOCKS

You will be provided the following keys:

Security door key, unit door key, and mail box key (if applicable)

All deadlocks, keys, window latches, doorknobs and any additional device required by local government ordinance, will be in working order when when Tenant moves in.

Tenant shall be liable for the entire cost all of key and lock replacements. Tenant shall not change the locks or add a deadbolt lock without prior written consent of Landlord.

There is a lockout charge of $75.00 - $150.00.

Filed in District Court
State of Minnesota
1/27/2025 4:03 PM

Tenant will be charged $100.00 per key for unit or mailbox and $150.00 per security door key or FOB that is lost for any reason or if not returned upon move out.

All keys must be returned to Landlord upon move out. Tenant will be charged for the cost of new locks and keys that are not returned.

By initialing below, you acknowledge and agree to the terms in Section 1.

X 
Afnan M. Husain

# 2. Policies and Procedures

## 2.1 COMMUNITY POLICIES OR RULES

Tenant and all guests and occupants must comply with any written community rules and policies attached to this lease and made a part thereof by reference, including instructions for care of the building and any of Landlord's property. Any and all rules are considered part of this Lease Contract. Landlord may make reasonable changes to written rules, effective immediately, if distributed and applicable to all units in the community. The attached Handbook / addenda, for all intent and purposes shall constitute an extension of / addenda to this lease.

## 2.2 RESIDENT SAFETY AND PROPERTY LOSS

Tenant and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors, keyed deadbolt locks, keyless deadbolts, window latches, and other security or safety devices. You agree to make every effort to abide by the rules and guidelines in this Lease Contact.

**Casualty Loss**

Landlord is not liable to any Tenant, resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law.

**Smoke Detectors**

The Unit is equipped with smoke and carbon monoxide detectors in accordance with state or local government regulations. Tenant must immediately report smoke-detector malfunctions to Landlord. Neither Tenant nor others may disable smoke detectors. Tenant will be liable to others and Landlord for any loss, damage, or fines from fire, smoke, or water if that condition arises from disabling or damaging the smoke detector or from Tenant's failure to replace a dead battery or report malfunctions to Landlord.  If Landlord discovers that Tenant(s) have removed, deactivated, or disabled a smoke detector Tenant will be charge $20.00 to reattach the smoke detector and $85.00 or more to replace a damaged or missing smoke/CO detector.

**Safety and Crime Free**

Tenant or any guest or resident under Tenant's control, should not engage in any criminal activity in the unit or community.

In case of emergency, fire, accident, smoke or suspected criminal activity, dial 911 or call emergency personnel. You should then contact our representative at the On Call line at 612.400.2974. Unless otherwise provided by law, Landlord is not liable to Tenant or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes.

## 2.3 PARKING

Parking is reserved for  Residents only and use may require a permit and an additional charge as outlined in this lease for that right.  No guest parking is allowed.  You will park on the property at your own risk. We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. We may have unauthorized or illegally parked vehicles towed away at the vehicle owner's expense.  Vehicles are prohibited from parking on the premises if they are inoperable, have no current license, take up more than one parking space, are parked in a marked handicap space without proper handicap insignia, block other vehicles from existing, are parked in a space not dedicated to parking, including, but not limited to, grass, sidewalks, patio, and fire lanes.  resident agrees to cooperate with management in scheduling snow remove (if provided) and maintenance of parking lot or garage.  Vehicles parked illegally will be towed away at the vehicle owner's expense.

27-CV-HC-25-818

Case 25-30895    Doc 42-1    Filed 05/14/25    Entered 05/14/25 14:39:16    Desc
Affidavit    Page 8 of 36

Filed in District Court
State of Minnesota
1/27/2025 4:03 PM

## 2.4 PETS

Pets (including mammals, reptiles, birds, fish, and insects) are not allowed unless otherwise stated in wiring by Landlord. Tenant must remove an illegal animal within 24 hours of notice from Landlord, otherwise Tenant will be considered in violation of this Lease Contract. Service / Companion animals are allowed by Landlord upon completion and approval of Landlord's paperwork.

If Tenant or any guest or occupant violates animal restrictions (with or without Tenant's knowledge), Tenant will be subject to additional charges such as a $200.00 illegal pet fine and additional rent, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during the term of occupancy (with or without Landlord's consent), Tenant will be charged for de-fleaing, deodorizing, and shampooing carpet in the unit.

## 2.5 LEAD PAINT DISCLOSURE

Tenant acknowledges notification that Landlord is not aware of any lead-based paint hazard present in the building, and that there are no known records or reports pertaining to lead based paint hazards in the building which the Landlord is aware of.

By initialing below, you acknowledge and agree to the terms in Section 2.

X 
Afnan M. Husain

# 3. Responsibilities

## 3.1 TENANT PROMISES

**TENANT PROMISES:** (a) Not to damage or misuse the premises, or allow Tenant's guests or others to do so; (b) Except with the prior written consent of Landlord not to make any alterations, additions, or improvements (including repainting or wallpapering) on the premises, remove any fixtures or appliance, change the existing locks on the premises, or drive nails, screws, or other objects into or otherwise deface the ceilings, woodwork, or floors in the premises; (c) to continuously occupy the premises and keep clean and neat; (d) Not to permit any loud, boisterous, unruly, or thoughtless conduct on the premises so as to disturb the right of others to peace and quiet; (e) To use the premises only as a private residence, and not in any way that is unlawful or dangerous or which would cause a cancellation, restriction, or increase in premium on insurance on the premises; (f) Not to use or store on or near the premises any flammable or explosive substance; (g) To promptly notify Landlord in writing of any condition on the premises which requires repair, is dangerous to the health or safety of Tenant or others, or which may do damage to the premises or waste any utilities; (h) To promptly pay all rents, services charges, or other amounts when due and not to withhold rent for any cause; (I) Not to use or occupy the premises, (or permit any use) contrary to any applicable statute, rule, ordinance, order, or regulation, and to full comply with all of the same. Reasonable use of small nails (but not tape or adhesive) in the wall is permitted to hang pictures and decorations (j) use any flammable appliance on any balcony, deck, or porch.

## 3.2 MISCELLANEOUS TENANT DUTIES

Tenant agrees not to leave bottles, newspapers, packages, bicycles, sleds, or other property of the Tenant's in the common hallways, stairs, basement, or yard. The sidewalks, entrances, passages, basement, stairways, and halls may not be obstructed or used for any purpose other than entry to or exit from the Apartment. The areas outside the Apartment forming a part of the buildings, or grounds, may not be used in any way except as designated by Landlord for use in common by Tenants of the building. Tenant agrees not to smoke, eat, or consume alcoholic beverages in any common area of the property. Tenant agrees not to sit, loiter, or stand in or about any common area of the building or grounds.

## 3.3 TRASH REMOVAL

All trash and recycling must be in bags and placed into the dumpster. You will be
charged $35.00 and receive a citation for any bag or debris left in the hallway or anywhere outside of the dumpster and receive an infraction. The dumpster is only for normal every day household waste and no other material may be placed in the dumpster including furniture. Tenant will be charged for excessive waste caused by Tenant disposing of personal items at move in and move out. Tenant will also be charged for putting normal household garage into the recycling bins $35.00 per bag for management's cost to move trash out of recycling.

## 3.4 CONDITION OF PREMISES AND ALTERATIONS

Tenant accepts the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons.

27-CV-HC-25-818

Case 25-30895    Doc 42-1    Filed 05/14/25    Entered 05/14/25 14:39:16    Desc
Affidavit    Page 9 of 36

Filed in District Court
State of Minnesota
1/27/2025 4:03 PM

Landlord disclaims all implied warranties. Tenant shall maintain the premises in good, clean, and habitable condition throughout the tenancy. Tenant agrees not to alter, damage, or remove Landlord's property, including alarm systems, smoke detectors, furniture, telephone and cable TV wiring, screens, locks, and security devices. You may not paint or make any permanent alteration without Landlord's written consent.

## 3.5  REQUESTS, REPAIRS, MALFUNCTIONS

Tenant shall report any damage or problem immediately upon discovery or may be held responsible for the cost. Landlord's complying with or responding to any oral request regarding security or non-security matters does not waive the strict requirement for written notice of maintenance issues under this Lease Contract. Tenant must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to the property, or your health, or safety. Tenant will respond in accordance with state law and the Lease Contract to repair or remedy the situation, as necessary. Landlord may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work.

## 3.6  RIGHT OF ENTRY AND INSPECTIONS

Landlord has the right to enter the premises at all reasonable hours, with proper notice, for the purpose of inspection, responding to Tenant requests, making repairs and/or preventative maintenance, pest control, showing to prospective residents, buyers, loan officers or insurance agents, and for any emergency situations that may arise.

## 3.7  MOVE-OUT

**NOTICE PERIOD AND REQUIREMENTS.** Landlord and Tenant must give a two month plus one full day advance notice from the last day of the month, (the notice) to the other party to terminate this Lease. This lease cannot be terminated prior to the end of the lease term indicated above. A notice to terminate the Lease is effective only if it includes the two month and one day advance notice and is received by the end of the month and has as the termination date the last day of a calendar month. Even if this lease becomes a "month-to-month" lease, Landlord or Tenant must give the aforementioned notice to terminate the lease. All notices by Tenant to Landlord must be in writing and delivered to the location where rent is to be paid and is not valid until received by Landlord. Notice by Landlord to Tenant, for any reason, may be given by any of the following methods: (a) regular mail; (b) certified mail, return receipt requested; (c) personal delivery to any Lessee; (d) personal delivery at the Premises to any Occupant or (e) affixing the notice to the door of the Premises (f) email from the manager's email account. The notice period stated herein of this lease shall constitute the notice period required by Landlord and Tenant for all changes, deletion of parking, garage rental, (in on a month-to-month lease) or any other fees or services made part of the original Lease or added thereafter.

Surrender, abandonment, and eviction ends Tenant's right of possession for all purposes and gives Landlord the immediate right to: clean up, make repairs in, and re-lease the apartment; determine any security deposit deductions; and remove property left in the apartment. Surrender, abandonment, and eviction affects Tenant's rights to property left in the apartment. Surrender, abandonment, and eviction do not affect Landlord's mitigation obligations.

### Cleaning

Tenant must thoroughly clean the unit, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. If Tenant does not clean adequately, Tenant will be liable for reasonable cleaning charges.

### Charges

Tenant is liable for the following charges, if applicable: unpaid rent; unpaid utilities; un-reimbursed service/late charges; repairs or other damages, excluding ordinary wear and tear; replacement cost of our property that was in or attached to the apartment and is missing or damaged; un-returned keys; missing or burned-out light bulbs; removing or re-keying unauthorized security devices or alarm systems; agreed reletting charges; packing, removing, or storing property removed or stored; removing illegally parked vehicles; animal-related charges; government fees or fines against us for violation (by Tenant, Tenant's occupant, or guest) of local ordinances relating to smoke detectors, false alarms, recycling, or other matters; late-payment and returned-check charges, plus attorney's fees, court costs, and filing fees actually paid; and other sums due under this Lease Contract. Tenant will also be charged our cost for extermination if it is discovered that Tenant's unit has become infested with bedbugs.

### Deposit Refund

Tenant's security deposit will be refund after move out (less lawful deductions) and an itemized accounting of any deductions pursuant to the lease and Minnesota Statute 504B.

## 3.8  AIR CONDITIONING

Tenant shall not install any air conditioner unit or washer/dryer without landlord's written permission.

## 3.9  INITIAL CONDITION

Tenant acknowledges having fully examined the premises and agrees that they are now satisfactory and in tenantable and clean condition,

27-CV-HC-25-818

Case 25-30895    Doc 42-1    Filed 05/14/25    Entered 05/14/25 14:39:16    Desc
Affidavit    Page 10 of 36

Filed in District Court
State of Minnesota
1/27/2025 4:03 PM

and that there are no existing damages except as stated on the Move-in Inspection Report. Tenant acknowledges that by allowing his/her photo to be taken by Landlord's Agent and attached to the electronic move in inspection said report fairly represents the condition of the Premises at the time of move. Tenant is renting the Premises with the existing personal property, if any, and without any obligation or representation by Landlord to make any alteration, improvements, or repairs on the premises during the Lease term.

## 3.10 RE-RENTAL FEE

Tenant understands that she will be responsible to Landlord for the cost of re-renting the apartment for premature abandonment of the apartment or failure to provide proper notice to vacate including but not limited to costs to advertise, show, and the administrative costs associated therewith.

## 3.11 VACATING

Tenant agrees to vacate the Premises on or before 12:00 (Noon) on the termination date of this Lease, or 12:00 (Noon) on the last day of the month of any renewal, or extension as provided in this Lease. If Tenant fails to vacate at the required date and time, Tenant shall be liable to Landlord for any and all losses incurred by Landlord, such as loss of rent, court costs and attorney's fees in addition, Tenant agrees to pay a holding over fee of $150.00 per hour for each and every hour or portion thereof that tenant has not vacated the Premises after 12:00 (Noon) on the last day of the calendar month of which the tenant has paid rent.

## 3.12 DUTY TO PAY RENT AFTER EVICTION

If Tenant is evicted because Tenant violated a term of this Lease, Tenant must still pay the full monthly rent until; (a) the unit is re-rented, (b) the date the lease ends, or ( if the Lease is month-to-month, the next notice period ends. If the unit is re-rented for less than the rent due under this Lease, Tenant will be responsible for the difference until the Date this lease ends, or if the lease is month-to-month, until the end of the next notice period.

## 3.13 TENANT REIMBURSEMENTS

Tenant agrees to reimburse Landlord promptly for any loss, damage, or cost of repairs, or service (including plumbing trouble, damage from windows or doors left open, or water damage) cause by negligence or improper use by Tenant, Tenant's agents, family, or guests. Tenant agrees to pay all costs incurred by Landlord incidental to any abandonment of the premises or other breach of the Lease by Tenant, such as costs incurred in attempting to re-rent premises, including advertising and other costs. Tenant agrees to pay for all of Landlord's attorney fees and costs resulting from any legal proceeding for eviction, unpaid rent, or any other debt or charge. These reimbursements are due when Landlord or its representatives make demand on Tenant. Landlord's failure or delay in demanding any of the reimbursements, services, or returned check charges, or other sums due from Tenant shall not be deemed a waiver; and Landlord may demand them at any time, whether before or after Tenant vacates the premises. Tenant also agree to reimburse Landlord if it is discovered that the unit has become infested with bedbugs the entire cost of the extermination fees.

## 3.14 MONTH TO MONTH FEE

Tenant agrees to pay a $300.00 short term lease fee for each month or portion thereof that Tenant(s) reside in the premises after the end of the lease where Tenant and Cosigner have not signed a new lease offered by Landlord.

By initialing below, you acknowledge and agree to the terms in Section 3.



X _A H_____

Afnan M. Husain

# 4. General Clauses

## 4.1 RELEASE FROM LEASE CONTRACT

Unless Tenant is entitled to terminate this Lease Contract, Tenant will not be released from this Lease Contract for any reason, including, but not limited to, voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

Tenant is allowed to buy out the Lease with the following terms: Tenant must give a written notice of at least one calendar month plus one day notice and pay rent for that month during the notice period. Tenant must also pay a fee equal to three month's worth of rent as liquidated

27-CV-HC-25-818

Case 25-30895    Doc 42-1    Filed 05/14/25    Entered 05/14/25 14:39:16    Desc
Affidavit    Page 11 of 36

Filed in District Court
State of Minnesota
1/27/2025 4:03 PM

damages if the Lease has (6) or more months until its expiration after notice to vacate has been given, or two month's equivalent of rent as liquidated damages if the Lease will expire in (5) or less months after the notice period as valuable consideration for releasing Tenant from the Lease. This will only be allowed if the account is current and all balances paid and the lease had not been violated or Tenant has had any lease violations. Unless otherwise agreed to, the above described lease termination fee is due immediately upon delivery of the written notice to vacate. Notice to vacate will not be valid until the termination fee is paid in full.

Subletting is not allowed under any circumstances.

## 4.2  DEFAULT BY RESIDENT

Tenant will be in default if Tenant or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: failure to pay rent or other amounts owed when due; Tenant or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, or engages in dangerous behavior, regardless of whether or where arrest or conviction occurs; Tenant abandons apartment; Tenant provides false or fraudulent documentation requested by Landlord; Tenant or any occupant is arrested, convicted, or given deferred adjudication for a felony offense; any illegal drugs or paraphernalia are found in the apartment; Tenant or any guest or occupant engages in any prohibited conduct; or Tenant or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government.

**Other Remedies**

If rent is delinquent, Tenant immediately forfeits all rights to occupy the apartment any longer, and if you have not vacated the unit by the date specified in the Lease Contract termination notice, Tenant is guilty of a misdemeanor. Each day of Tenants unlawful presence in the apartment constitutes a separate offense. Landlord may report unpaid amounts to credit agencies. Upon Tenant's default and early move-out, Tenant will pay Landlord any amounts stated to be rental discounts, in addition to other sums due. Upon Tenant's default, Landlord has all other legal remedies, including suit for Lease Contract termination, possession, damages, rent, and all other monies due. Landlord may turn any returned checks over to law enforcement officials for prosecution according to law.

## 4.3  CONTRACT TERMINATION AND DISPUTE

This Lease Contract may only be amended, waived, or terminated by Landlord's representatives in writing. Any oral promises, representations, or agreements by our representatives shall not be considered legally binding. No action or omission of Landlord's representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Landlord's not enforcing or belatedly enforcing written notice requirement, rental due dates, acceleration, liens, or other rights is not a waiver under any circumstances.

**Waiver of Jury Trial**

To minimize legal expenses and, to the extent allowed by law, Landlord and Tenant agree that a trial of any lawsuit based on statute common law, and/or related to this Lease Contract shall be to a judge and not a jury.

**Force Majeure**

Landlord shall be excused from performance of obligations if prevented from fulfilling such obligations by an act of God, strikes, epidemics, war, acts of terrorism, riots, or other occurrence, which is beyond our control.

## 4.4  RIGHT TO INSPECTION

You shall have the right but not the obligation to a move out inspection.

## 4.5  PARTIAL PAYMENT OF RENT

PARTIAL PAYMENT OF RENT; Landlord reserves the right to commence Unlawful Detainer Proceeding against Tenant for unpaid rent, even if partial payments of rent have been received for the month(s) sited in said proceedings.

## 4.6  NO SMOKING POLICY

Tenant agrees and acknowledges that the premises is to be occupied by Tenant and members of Tenant's household have been designated as a smoke-free living environment. Tenant, guests, and members of Tenant's household shall not smoke, including e-cigs and vaping, anywhere in the unit rented by Tenant, where the Tenant's dwelling is located, or in any of the common areas or adjoining grounds of such building or other parts of the rental community, nor shall Tenant permit any guests or visitors under the control of Tenant to do so. Any Tenant or person under Tenant's control caught smoking will be fined a $200.00 fee and receive a lease violation notice.

## 4.7  ICE AND SNOW NOTICE

**SNOW AND ICE NOTICE**

Landlord will make a good-faith effort to keep walkways and common areas in a reasonably safe condition by providing, at minimum, the snow and ice-related services required by law. Additional measures will be taken at the sole discretion of the Landlord. Landlord will

27-CV-HC-25-818

Case 25-30895    Doc 42-1    Filed 05/14/25    Entered 05/14/25 14:39:16    Desc
Affidavit    Page 12 of 36

Filed in District Court
State of Minnesota
1/27/2025 4:03 PM

provide Tenant a schedule of the time and manner in which measures or services are to be taken or provided, if any. Notwithstanding the foregoing, the accumulation of snow and ice on the walkways and common areas poses a known risk that may affect the condition of the property; requiring Tenants, and their guests, to use caution when traversing the property. By signing this agreement, Tenant hereby warrants that he/she has been put on notice of a known dangerous condition of the property created by the accumulation of new and ice on the walkways and common areas of the property, and Tenant, and their guests, will use the requisite level of caution and reasonable care when conducting activities on the property. Tenant further agrees to hold harmless Landlord for damages caused by Tenants failure to use the requisite level of caution and reasonable care when on the property. The snow and ice notice serves to put Tenants and their guests on notice of a possible dangerous condition.

**WAIVER OF LIABILITY**

Landlord will provide snow and ice management services to walkways and common areas as required by state law. Landlord will be sole determinant of the type and amount of additional snow and ice management services, if any, to be provided to the walkways and common areas of the property. In no event shall Landlord, his heirs, successors or assigns be held liability to Tenant, his heirs, assigns, invitees or licensees for Damages to persons or property in connection with the snow and ice-related services provided, regardless of any action or inaction on the part of the Landlord or his assigns, or failure, breakdown, malfunction or insufficiency of the services provided.

Nothing contained in this Lease will require Landlord to provide snow and ice management services to areas under the exclusive control of the Tenant, or additional services to common areas beyond those required by law. Tenant assumes all responsibility and liability for removal of snow and ice from areas under Tenant's exclusive control, and hereby agrees to defend and indemnify Landlord, his, successors and assigns in any action for damages arising from Tenant's failure to maintain those areas under Tenant's exclusive control.

Tenant further agrees to release, indemnify, defend, and forever discharge Landlord, his heirs, successors and assigns from all liability, claims, demands, damages, costs, expenses, actions and causes of action in respect to death, injury, loss or damage to property, third-parties, or a third party's property arising from negligence or any other conduct constituting less than gross negligence, recklessness, willful or wanton conduct, or intentional or illegal acts on the part of the Landlord or his assigns.

## 4.8  RESIDENT INFORMATION, COMMUNICATION, AND MEDIA RESPONSE

Resident is advised, and agrees, that Management may be asked or required to provide resident names or contact information in connection with applicable legal requirements, such as

any census inquiry on local rental licensing ordinances, to assist first responders, or to vendors or businesses that may be working with Management to assist in resident notifications, communications, setting up software systems, email notifications, payment systems or other tenant and property services. Management will not disclose or provide anything other than the names of Residents and household members, and tenant contact information.

In circumstances where there is a dispute or disagreement between Management and any Resident, Management will only deal with the Resident, or any licensed attorney or Government agency acting on behalf of the Resident, and will not deal with third-party or advocate without Resident participating in any discussion or communication or other

proper written organization. In the events that the Resident takes action to place information about Management, or any dispute with the site owner, Management staff, our contractors, or the rental community property in any social media posting, or other public place, or makes comments or statements that Management believes are disparaging, are not completely true, or would cause harm to Management's business reputation, Management shall be entitled, and Resident agrees, consents, and acknowledges that Management may respond to any statement by posting initiated by Resident to air a grievance or share information about a dispute or conflict with Management on some public platform, including any social media posting, web site, message board or similar. Management should be entitled to respond to any reports that it believes are false, inaccurately portray the financial or legal responsibilities of the Resident, or that do not fully and fairly reflect the position of both parties, and the terms of the parties lease, and community rules or other laws or agreements by responding to such report with specific information relating to any dispute including financial information about any damages, obligations, or amounts owed by Resident to Management, by providing photos of any damage or disputed conditions, and may include excerpts from the parties' lease lease and other communications, to allow Management an equal opportunity to fairly and fully respond to any statement of Resident, or action by Resident, to air a grievance or dispute or other issue between Management and Resident and/or Resident's guest, or third parties in any public forum or other social media site,

Resident expressly waives any expectation or right of privacy, or other claim of

confidentiality, relating to the relationship, agreements, and communications between Management and Resident should Resident take steps to disclose or post information to other third parties whether in a public, open forum, or other internet group or social media site that may have more limited access, but is a disclosure to persons that are not a party to this lease.

## 4.9  RIGHT OF RE-ENTRY

Landlord shall have the right, with or without terminating this Lease, **to re-enter the Premises and take possession thereof** by summary proceeding, eviction, ejectment or Table of Contents otherwise and may dispossess all other persons and property from the Premises.

Filed in District Court
State of Minnesota
1/27/2025 4:03 PM

By initialing below, you acknowledge and agree to the terms in Section 4.



X_____

Afnan M. Husain



Filed in District Court
State of Minnesota
1/27/2025 4:03 PM



Gardner Investments, Inc.

1905 Stevens Ave • Suite B • Minneapolis, MN 55403
(651) 777-3612

# 5. First Month Rent Deferred Addendum

### 5.1  TENANT'S 1ST MONTH RENT

Tenant shall receive as deferred rent the first month's rent of  $760.00  - for the rent period beginning  10/24/2024  .  This deferred rent shall be totally forgiven on  11/30/2025  provided Tenant has not violated any term or condition including paying rent late.  Tenant will only be able to take this credit if Tenant remains for the entire lease period.  If for whatever reason, tenant does not stay the entire lease period, or if tenant is delinquent in any monies due and owing then Tenant or in any way violates any term or condition of the lease the entire amount of

| | |
|---|---|
| Rent | $760.00 |
| Liability to Landlord Insurance | $10.50 |
| Admin Fee - Liability to Landlord Insurance | $4.50 |
| **Total:** | **$775.00** |

shall   immediately be due and payable.

By signing below, you acknowledge and agree to the terms in Section 5.

X *Afnan Husain*
_____
Lessee                                            IP Address: 172.58.10.92
                                                      10/23/2024 09:08pm CDT

Filed in District Court
State of Minnesota
1/27/2025 4:03 PM




Gardner Investments, Inc.

1905 Stevens Ave • Suite B • Minneapolis, MN 55403
(651) 777-3612

# 6. Property Rules and Regulations

## 6.1  GENERAL RULES AND POLICIES

Congratulations on your decision to make  1905 Stevens  your new home.  On behalf of all of us, welcome to your new home..  So that we are all on the same page I would like to go over some of our House Rules, Instructions, and Regulations.

**CONTACT INFORMATION**
 1905 Stevens  is independently owned and operated.  Our office is located at 1905 Stevens Ave So. Suite B, Mpls MN  55403.  The best way to reach the manager is to email us through your tenant portal or call the office at 651.777.3612.    All maintenance concerns should be reported through your online tenant portal so that they can be handled in a timely fashion.  In case of a maintenance emergency such as no heat, flooding, or no electric call 612.283.1074 for life threatening emergencies hang up and call 911.

**RENT & LATE FEE**
Your Rent of

| | |
|---|---|
| Rent | $760.00 |
| Liability to Landlord Insurance | $10.50 |
| Admin Fee - Liability to Landlord Insurance | $4.50 |
| **Total:** | **$775.00** |

is due on or before the 1st day of each month.  It is strongly recommended that you set up an automatic payment out of a bank account or you can use a credit or debit charge.  Third party charges may apply..   You can also mail a check or money order,  but please know that there is a $15.00 service charge that will be added to your rental account for each check payment.  Cash is not allowed.  If your check is not signed or does not have remittance information on it we can not deposit it.  Your rent will be considered unpaid and will incur late charges.  Please write your apt number on your payment.

If Rent is not received on or before 4:00 PM on the 3rd of each month it will be considered late and incur an 8% late fee.  Any unpaid balance regardless if it's current rent due or accumulated from previous months will incur an 8% late fee.   There is also a $50.00 administrative fee added to accounts with any balance greater than one half of one month's rent assessed after the 9th day of each month.   This Administrative Fee is NOT a late fee but our costs in attempting collection and costs associated therewith.

If you will be late paying rent for a month you should contact us directly and work out arrangements for payment.  This will avoid miscommunication and possible legal actions taken by our Attorney.

**INFRACTIONS**
If you violate any of the rules outlined herein you will receive an infraction letter.  Additionally, you may be fined up to $200.00 and/or evicted without notice.

SMOKING

No smoking or vaping of anything is permitted anywhere within the building.  You will be fined $200.00 for smoking anywhere in the building and possibly evicted.

**LOCKOUTS AND LOST KEYS**
If you lock yourself out of the building or apartment there is a $75.00 to $150.00 lock out charge.  There is a $125.00 charge for a replacement security door key or FOB and $50.00 to $150.00 to replace your unit or mail box keys.

**HOUSEKEEPING**
Your apartment must at all times clean and free of debris at all times.  We will be conducting housekeeping inspections periodically through the year inspecting each and every apartment to ensure that sanitary and safe conditions are being maintained.  You will be warned to clean unsanitary areas and if you do not we will clean and charge you for it.  You will also receive an infraction.

**SMOKE & CO DETECTORS**
Minnesota State Law states that it is illegal for a resident to remove, disable, or tamper with a smoke detector.  If during an inspection we discover this we will charge $50.00 to reinstall and $200.00 to  replace the detector and you will receive an infraction.  As a friendly reminder

Filed in District Court
State of Minnesota
1/27/2025 4:03 PM

our building is smoke free.  There is no smoking anywhere inside the building or your apartment.

## TRASH REMOVAL

All trash must be in bags and placed into the dumpster.  You will be charged $25.00 for any bag left in the hallway or building common areas and receive an infraction.  Please note that only normal household waste is allowed in the dumpster and NO furniture is allowed.  Our trash service charges us for excessive trash such as when moving out as well as removing furniture and we will pass that on to you.  If you place your old furniture out into the hallway or basement we will dispose of it and charge you for time and disposal cost.  The trash collection site is under 24 hours a day survaniance.

## SURVEILLANCE

For your protection the common areas are monitored by surveillance cameras including the area surrounding the dumpster and recycling.

## CONTRABAND

We are a drug free property.  If during any inspection of your unit we discover any drugs or drug paraphernalia we will confiscate it and you will receive an infraction and fine.  Additionally, no guns or weapons are allowed in the premises.

## QUIET ENJOYMENT OF THE PREMISES AND SAFE ENVIRONMENT

We do not allow any behavior that is rude, threatening, or disrespectful of those residents or staff.  We currently have on site staff who will be patrolling the building at various times.  Loud tv, music or parties will not be allowed after our quiet time of 10:00 pm.  If you violate this rule you will receive a lease infraction and may be immediately asked to vacate.

## PARKING & PLOWING

Parking is only for residents that have paid for a specified parking spot.  If you are interested in a parking spot please contact your manager.  If you park in back in a parking spot you are not paying for or assigned we will tow you away at your expense without prior warning.

## LEASE RENEWAL & VACATING

You will receive two and one half months prior to the end of your lease a letter stating the new terms of the next lease period.  You must provide written notice of your intention to not renew and vacate at least 2 full months and 1 day prior to the end of your lease or you may lose your deposit and owe for future month's rent.  If no notice to vacate is received then we will send you a new electronic lease for you to review and sign.  If you don't sign the lease and you don't turn in notice to vacate you will be charged a $300.00 month to month fee until you sign the lease.  Your deposit will be returned within 21 days after you turn in your keys, vacate the premises, and provide us with your forwarding address.  Please contact the post office with your new forwarding address.

## PET POLICY

Pets are not allowed on the premises without prior written permission.  Pet fees and monthly pet rent will apply.  If you are approved to have an animal in your apartment you cannot go out and just get another animal.  Each pet must be approved and there is a 2 pet maximum.

Although we do allow service animals no pet is considered a service animal until all  paperwork is received.  You will be fined and possibly evicted if you bring a pet into the property without the proper paperwork.

All Pets and Service Animals MUST be properly licenced in the City of the property.


Once again, thank you for making  your home and we look forward to a bright and pleasant future.


Sincerely,


 Mr. Corey Favaro

Filed in District Court
State of Minnesota
1/27/2025 4:03 PM

By signing below, you acknowledge and agree to the terms in Section 6.

X *Afnan Husain*
_____
Lessee                    IP Address: 156.47.105.149
                          10/23/2024 09:23pm CDT



Filed in District Court
State of Minnesota
1/27/2025 4:03 PM

**Gardner Investments, Inc.**



1905 Stevens Ave • Suite B • Minneapolis, MN 55403
(651) 777-3612

# 7. Sign and Accept

### 7.1  ACCEPTANCE OF LEASE

This is a legally binding document. By typing your name, you are consenting to use electronic means to (i) sign this contract (ii) accept lease agreement and addenda. You will receive a printed contract for your records.

X *Afnan Husain*

Lessee                    IP Address: 156.47.105.149
                          10/23/2024 09:23pm CDT

X *Marshall B. Jackson*

Lessor                    IP Address: 24.179.237.226
                          10/24/2024 07:07am CDT

# EXHIBIT B – COMPLAINT SEEKING EVICTION IN HENNEPIN COUNTY HOUSING COURT

Filed in District Court
State of Minnesota
1/27/2025 4:03 PM

**State of Minnesota**                                              **District Court**

| County Hennepin | Judicial District: | Fourth District |
| | Court File Number: | |
| | Case Type: | Housing-Eviction |

Gardner Investments, Inc.and MBJ Development
1905 Stevens Avenue, Suite B
Minneapolis, MN. 55403
Plaintiff (Landlord)
<small>Address</small>

Plaintiff's Date of Birth: _____

**vs.**

Afnan M Husain; John Doe
<small>Defendant (Tenant)</small>
1905 Stevens Avenue So., #203
Minneapolis, MN. 55403
<small>Address</small>

**Eviction Action Complaint**
**(Minn. Stat. § 504B.321)**

Tenant's Date of Birth: _____ <small>(If known)</small>

STATE OF MINNESOTA    )
                      )  )
                      )  SS
COUNTY OF HENNEPIN    )

I, _____ Kimberly Tennyson _____ state:
<small>(name of person signing complaint)</small>

1. Landlord leased or rented to tenant(s) on **October 24 2024**, by **written** agreement, the premises at: **1905 Stevens Avenue So., #203, Minneapolis, in the county of Hennepin, state of Minnesota, zip code 55403. The term of the lease is October 24, 2024 to November 30, 2025. The monthly rent amount is $775.00.** The landlord of the premises described above is: **Gardener Investments, Inc, 1905 Stevens Avenue, Suite B, Minneapolis, MN 55403.**

2. Landlord having present right of possession of said property, has complied with Minn. Stat. § 504B.181 by:
   X   a. disclosing to the tenant either in the <u>lease</u>
       i.  the person authorized to manage the property AND
       ii. a landlord or agent authorized by the landlord to accept service of process and receive and give receipt for notices and demands, AND
       b. posting in a conspicuous place on the property a printed or typewritten notice containing the above information

<small>(Where Posted)</small>

Filed in District Court
State of Minnesota
1/27/2025 4:03 PM

**X** c.  the above information was known by the tenant not less than 30 days before the filing of this action because:  Landlord has communicated with tenant in writing.

3.  Landlord seeks to have the tenant evicted for the following reasons:
**X** a.  The tenant is still in possession of above premises and has failed to pay rent for the month(s) of **January 2025 rent in the amount of $775.00, filing fee of $302.00, service of process of $150.00 for a total due of $1,227.00 plus attorney's fees**.

4.  The landlord seeks judgment against the above tenant(s) for restitution of said premises plus costs and disbursements herein.

## Verification(s) and Affidavits

I, (Name) Kimberly Tennyson, being sworn/affirmed, state that I am the plaintiff/agent/attorney in this action, that I have read the complaint and that it is true to the best of my knowledge;

1. That tenant(s) is/are not now in the military service of the United States, to the best of my information and belief;

2. That the property subject to this Eviction Action is not covered by the Federal CARES Act.

3. The the property subject to this Eviction Action is not affiliated with any HUD subsidies.

4. That plaintiff has complied with applicable notice requirements by giving at least 14-day notice prior to the filing of this eviction action.

Dated:  January 27, 2025            /s/ Kimberly Tennyson
                                    Signature
I declare under penalty of perjury that everything I have stated in this document is true and correct.  Minn. Stat. § 358.116.

Name:  Kimberly Tennyson

Address: 2722 Piper Ridge Lane

City/State/Zip: Excelsior, MN  55331

Telephone: (612) 234-1655

E-mail:  kimtennyson@tennysonlawpllc.com

Filed in District Court
State of Minnesota
1/27/2025 4:03 PM

Written Notice of Possible Future Eviction Action

Afnan M. Husain

1905 Stevens Ave. SO. 203
Minneapolis, MN 55403

This notice is to let you know that Gardner Investments, Inc. may bring an eviction
action against you in court because of nonpayment of rent or other unpaid financial
obligation.

1.  As of 01/03/2025 you owe rent and late and other fees totaling 775.00 for the
premises situation at 1905 Stevens Ave. SO.
203
Minneapolis, MN 55403
.
2. You will find as an attachment to this letter your tenant ledger showing all of the
credits and charges and a running balance of your account up to 01/03/2025.

3. Mr. Corey Favaro is the AUTHORIZED AGENT for Gardner Investments, Inc., and
can accept service and rent payments at 1905 Stevens Ave So.
Minneapolis, MN 55403
.

Important Information:
Your landlord can file an eviction case if you do not pay the total amount due or move
within 14 days from the date of this notice.
Need help paying for rent?  To apply for financial help, contact your local county or
Tribal social services office, apply online at MNBenefits.mn.gov, or call the United Way
toll-free information line by dialing 211 or 800-543-7709.
Need legal help?  You have the right to seek legal help.  If you can't afford a lawyer, free
legal help may be available.  Contact Legal Aid or visit www.lawhelpmn.org to know
your rights and find your local Legal Aid office.  Please immediately call Mr. Corey
Favaro at 651.777.3612 and let us know if your intentions are to pay the rent due and
stay in the unit or if you intend to vacant.

_____

Filed in District Court
State of Minnesota
1/27/2025 4:03 PM

Gardner Investments, Inc.

1905 Stevens Ave
Suite B
Minneapolis, MN 55403

**Statement date:** 01/03/2025
**Move in date:** 10/24/2024
**Recurring rent:** 760.00
**Deposit balance:** 755.00

Unpaid Charges

Afnan M. Husain

1905 Stevens Ave. SO.
203
Minneapolis, MN 55403

 1905 Stevens

1905 Stevens Ave So.
Minneapolis, MN 55403

**Unit:** 203

**Mobile:** (507) 351-8598

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 01/01/2025 | Liability to Landlord Insurance - January 2025 - Admin Fee - Liability to Landlord Insurance | 4.50 | 0.00 | 4.50 |
| 01/01/2025 | Liability to Landlord Insurance - January 2025 - Liability to Landlord Insurance | 10.50 | 0.00 | 15.00 |
| 01/01/2025 | Rent - January 2025 | 760.00 | 0.00 | 775.00 |
| **Total** | | | | **775.00** |

| Total Amount Due | 0 - 30 Days | 30+ Days |
|------------------|-------------|----------|
| 775.00 | 775.00 | 0.00 |

Filed in District Court
State of Minnesota
1/27/2025 4:03 PM

## Tenant Ledger

**Tenants:** Afnan M. Husain
**Mobile:** (507) 351-8598
**Unit:** 203
**Property:** 1905 Stevens - 1905 Stevens Ave So. Minneapolis, MN 55403
**Status:** Current
**Move in date:** 10/24/2024
**Move out date:** --
**Lease Expiration:** 11/30/2025
**Rent:** 760.00
**Deposit Paid:** 755.00

| Date | Payer | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|
| Starting Balance | | | | | 0.00 |
| 10/19/2024 | | Application Fee Income (Tenant Screening) | 40.00 | | 40.00 |
| 10/19/2024 | Afnan M. Husain | Credit Card Payment (Reference #06BD-1A30) | | 40.00 | 0.00 |
| 10/22/2024 | | Tenant Security Deposits | 755.00 | | 755.00 |
| 10/22/2024 | Afnan M. Husain | Credit Card Payment (Reference #D36D-7E70) | | 755.00 | 0.00 |
| 10/24/2024 | | Rent - Move In Charge: Rent | 202.67 | | 202.67 |
| 10/24/2024 | | Liability to Landlord Insurance - Move In Charge Liability to Landlord Insurance | 10.50 | | 213.17 |
| 10/24/2024 | | Liability to Landlord Insurance - Move In Charge: Admin Fee - Liability to Landlord Insurance | 4.50 | | 217.67 |
| 10/24/2024 | | Rent - Move in Special - Credit for 1st mo. rent | -760.00 | | -542.33 |
| 11/01/2024 | | Rent - November 2024 | 760.00 | | 217.67 |
| 11/01/2024 | | Liability to Landlord Insurance - November 2024 - Liability to Landlord Insurance | 10.50 | | 228.17 |
| 11/01/2024 | | Liability to Landlord Insurance - November 2024 - Admin Fee - Liability to Landlord Insurance | 4.50 | | 232.67 |
| 11/04/2024 | | Rent - Prorated credit for move in date | -12.67 | | 220.00 |
| 11/11/2024 | Afnan M. Husain | Credit Card Payment (Reference #EAED-8BE0) | | 220.00 | 0.00 |
| 12/01/2024 | | Rent - December 2024 | 760.00 | | 760.00 |
| 12/01/2024 | | Liability to Landlord Insurance - December 2024 - Liability to Landlord Insurance | 10.50 | | 770.50 |
| 12/01/2024 | | Liability to Landlord Insurance - December 2024 - Admin Fee - Liability to Landlord Insurance | 4.50 | | 775.00 |
| 12/04/2024 | | Late & Other fees | 60.80 | | 835.80 |
| 12/06/2024 | Afnan M. Husain | Credit Card Payment (Reference #C7A9-BFD0) | | 150.00 | 685.80 |
| 12/13/2024 | Afnan M. Husain | Credit Card Payment (Reference #E597-E1B0) | | 670.00 | 15.80 |
| 12/13/2024 | Afnan M. Husain | Credit Card Payment (Reference #1239-7080) | | 67.00 | -51.20 |
| 01/01/2025 | | Rent - January 2025 | 760.00 | | 708.80 |
| 01/01/2025 | | Liability to Landlord Insurance - January 2025 - Liability to Landlord Insurance | 10.50 | | 719.30 |
| 01/01/2025 | | Liability to Landlord Insurance - January 2025 - Admin Fee - Liability to Landlord Insurance | 4.50 | | 723.80 |
| 01/04/2025 | | Late & Other fees | 60.80 | | 784.60 |
| Total | | | | | 784.60 |

Created on 01/23/2025

Page 1

# EXHIBIT C-ORDER AND JUDGMENT FOR EVICTION

| **State of Minnesota** | **District Court** |
|---|---|
| Hennepin County | Judicial District:    Fourth<br>Court File Number:  27-CV-HC-25-818<br>Case Type:     Housing |

Gardner Investments, Inc and MBJ
Development,
          Plaintiff,

vs.

Afnan M Husain, John Doe,
          Defendant.

**Eviction Action – Findings of
Fact, Conclusions of Law,
Order and Judgment
(Minn. Stat. § 504B.285, 504B.345)**

This matter came on for a motion hearing before the Honorable Tiffany Sedillos, Referee of District Court, on April 7, 2025.

Plaintiff was not present. Plaintiff shall hereinafter be referred to as Landlord. Defendant was present. Defendant shall hereinafter be referred to as Tenant.

Kimberly Tennyson, Attorney for Landlord, appeared.

Based upon the verified petition, testimony, evidence, and arguments presented, and all of the files, records, and proceedings, the Court makes the following:

### Findings of Fact and Conclusions of Law

1. This matter involves residential property located at 1905 Stevens Avenue So., #203, Minneapolis, Hennepin County, Minnesota, 55403.

2. The parties entered a written lease effective from October 24, 2024, to November 30, 2025. The current rent amount is $775.00 per month.

3. On January 27, 2025, Landlord commenced an eviction action against Tenant, alleging nonpayment of rent.

4. Tenant appeared on March 6, 2025, at the initial hearing in this matter to deny Landlord's allegations. The Court set this matter for a motion hearing.

5. On April 7, 2025, Tenant filed a motion to dismiss. Tenant raises equitable estoppel, fraud, improper service, and harassment as causes for relief. Tenant moved the Court to remove this matter to Federal Court. Tenant argues that they assigned their lease to a separate entity which was not notified of this eviction action.

6.   Landlord filed responsive pleadings on March 20, 2025, and April 3, 2025. Landlord argues that Hennepin County Housing Court is the proper venue for this matter, as there are no federal claims being litigated. *See* Pl. Supp. Mem. p. 1. Landlord argues that Tenant did not assign their lease in a valid manner to a separate entity. *Id*. Landlord argues that any amendment Tenant made to the lease was made without Landlord's notice, attention, or consent. *Id*. at p. 2.

7.   After the hearing on March 24, 2025, the Court gave the Tenant an opportunity to present evidence to the Court of a defense to the nonpayment allegation. Specifically, at the hearing on March 24, 2025, Tenant argued that no rent was owed because the Trust had paid the rent on her behalf. The Court ordered that Tenant file a paperwork showing the establishment of a trust, and proof of any payments that were made to Landlord for the months of January, February and March by April 3, 2025. Tenant filed no proof of establishment documents for the trust or any proof of rental payments for the requested months. On April 6, 2025, Tenant filed additional argument contesting the Court's jurisdiction.

8.   At a motion hearing on April 7, 2025, Tenant first argued that the Court lacked personal jurisdiction over Tenant. Tenant's argument is based on the allegation that she did not receive the mailing of the summons and complaint sent by Landlord.

9.   Minnesota Statutes section 504B.332, along with Minnesota General Rule of Practice 605, dictate how service is accomplished in an eviction case. In this matter, Landlord filed affidavits indicating the Tenant was served by "mail and post". The phrase, "mail and post" is the colloquial way in Housing Court of saying that two attempts at personal/substitute service were made and were unsuccessful, and therefore the Landlord as required by law also served by mail, posting, and email (in this case).

10.   Tenant argues that because she did not receive the mailing, that service was ineffective. Landlord has filed all required affidavits of service pursuant to Minnesota Statutes section 504B.332, subd. 4. An affidavit of service by mail was filed indicating that counsel mailed the complaint and summons to Tenant on February 25, 2025. Aff. of Service by Mail, filed 2/28/25. There is no requirement in the statute or rule that a tenant must receive the mailing in order for the Court to have jurisdiction. Tenant's argument that the Court lacks personal jurisdiction fails.

11.   Tenant also argues that because she assigned her lease agreement to a living trust that she is not a real party in interest and therefore not a proper Defendant in this action.

12.   Landlord argues that Defendant failed to obtain a release of the original lease agreement between Plaintiff and Defendant, leaving the Defendant in privity of contract with the Plaintiff. Further Landlord argues that the original tenant (the Defendant) has not extinguished privity of contract between the Plaintiff and the Defendant and could not do so without a bilateral agreement (consent and release) between landlord and tenant. Further, because the Defendant did not substitute another occupant and remains in possession of the property, the Defendant and Plaintiff also remain in privity of estate, which allows the landlord to evict the occupant.

13. "A lease is both an executory contract and a present conveyance, and creates a privity of contract and a privity of estate between the lessor and the lessee. The authorities hold that where the lessee relets for his whole term, the instrument, whatever its form, operates as an assignment of the original lease to the extent, at least, of transferring the privity of estate from the lessee to the sublessee, and thereby creates the relation of landlord and tenant between the original lessor and the sublessee, and gives the original lessor the right to enforce against the sublessee all the covenants which run with the land including the covenant to pay rent. But the original lessee still remains bound by his contract and liable to the original lessor for any default therein." *Davidson v. Minnesota Loan & Tr. Co.*, 158 Minn. 411, 415–16, 197 N.W. 833, 834–35 (1924).

14. Tenant argued at the hearing that she assigned the entire lease agreement to a trust, whether that conveyance is a valid assignment or a sublease or something else is immaterial to this matter. Housing Court is one of limited jurisdiction. An eviction is "a summary court proceeding to remove a tenant or occupant from or otherwise recover possession of real property." Minn. Stat. § 504B.001, subd. 4 (2024). "As a summary proceeding, the scope of an eviction trial is limited to "whether the facts alleged in the complaint are true. If a court or jury finds that the allegations are true, then the plaintiff is entitled to a writ of recovery of premises and an order to vacate." *Davies v. Simba*, A24-0002, 2024 WL 4344982, at *2 (Minn. Ct. App. Sept. 30, 2024)(citations and quotations omitted).

15. The Court finds that Landlord has complied with Minnesota Statutes sections 504B.321 and 504B.181. Both parties agree that Tenant signed a lease agreement with Landlord agreeing to pay $775/month to rent an apartment at 1905 Stevens Avenue So., #203, Minneapolis, Minnesota, 55403. Both parties agree that Tenant is still living in #203. Both parties agree that no one has paid any rent for #203, for the months of January, February, March, and now April 2025.

16. There are no disputed issues of material fact and Plaintiff is entitled to judgment as a matter of law.

### Order

1.    JUDGMENT: The Court Administrator shall enter judgment for:

   a. **Landlord** for recovery of the premises.  A Writ of Recovery of Premises and Order to Vacate shall be issued immediately upon request and payment of fee

   b. **Allowable costs and disbursements** to the prevailing party.

2.    SERVICE OF ORDER: The Clerk of Court shall serve/e-serve a copy of this Order on all parties or their attorneys as appropriate.

☒ **Let Judgment Be Entered Accordingly**

Recommended By:                                    By the Court:

_____        _____

Tiffany Sedillos
District Court Referee            April 7, 2025        District Court Judge            Dated: Apr 07, 2025

**Judgment**

I hereby certify that the above Order constitutes the entry of Judgment of the Court.

Dated: _Apr 07, 2025_____        By: _____
                                                        Deputy Court Administrator

MINNESOTA

JUDICIAL

BRANCH

# EXHIBIT D-ORDER VACATION ORDER FOR EVICTION AND QUASHING WRIT OF RECOVERY

**STATE OF MINNESOTA**                    **FOURTH JUDICIAL DISTRICT**

**COUNTY OF HENNEPIN**                         **DISTRICT COURT**

---

Gardner Investments, Inc. and MBJ Development,

                        Plaintiffs,
                                                              **ORDER**

vs
                                               **Case No.: 27-CV-HC-25-818**

Afnan Husain,

                        Defendant.

---

        This matter was reviewed administratively by the undersigned on April 9, 2025.

        Plaintiff was not present. Defendant was present through written filings.

        Based upon the oral and written arguments, and all the files, records, and proceedings in this case, the Court makes the following:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

        1.   On January 27, 2025, Plaintiff filed an eviction action against Defendant.

        2.   On April 7, 2025, the Court held a hearing on competing motions from the parties. The Defendant did not advise the Court that she had filed a bankruptcy case on March 28, 2025. The Court granted Plaintiff's motion for summary judgement and issued an Order for Judgement in favor of Plaintiff on April 7, 2025.

        3.   On April 8, 2025, Defendant filed a notice and motion notifying this Court that Defendant had filed a petition with the Bankruptcy Court on March 28, 2025.

        4.   The Court will vacate the Judgement entered on April 7, 2025, quash the writ, and stay this matter pending Defendant's bankruptcy action. 11 U.S.C. §§ 362, 541.

### ORDER

        1.      JUDGMENT VACATED: The judgment entered in this matter on April 7, 2025, is hereby VACATED.

        2.      WRIT QUASHED: The Writ of Recovery of Premises entered in this matter on April 8, 2025, is hereby QUASHED.

1

3.      STAYED: This eviction action is STAYED until further order of the
Court. Either party at any time may file an affidavit requesting that the stay be lifted and
further hearings scheduled in the matter.

4.      INACTIVE STATUS: The matter is placed on INACTIVE STATUS. The
placing of the case on inactive status does not constitute a dismissal of the action, but no
additional hearings may be held or documents filed while on inactive status. Either party
at any time may file an affidavit requesting that the case be removed from inactive status
and upon order of the Court, further hearings will be scheduled in this matter. If neither
party files an affidavit in this matter by **April 9, 2026,** this matter will be administratively
dismissed without further notice to either party.

5. SERVICE. The Clerk of Court shall serve/e-serve a copy of this Order on all
parties or their attorneys as appropriate.

Recommended by:                                By the Court:

_____                      _____
Hon. Tiffany Sedillos                          District Court Judge
District Court Referee                          Dated: Apr 10, 2025

# EXHIBIT E – LIST OF PRE-PETITION CHARGES

| Date | Description | Amount | | Running Total | |
|---|---|---|---|---|---|
| 10/19/2024 | Application Fee Income (Tenant Screening) | $ | 40.00 | $ | 40.00 |
| 10/19/2024 | Afnan M. Husain Credit Card Payment (Reference #06BD-1A30) | $ | 40.00 | $ | - |
| 10/22/2024 | Tenant Security Deposits | $ | 755.00 | $ | 755.00 |
| 10/22/2024 | Afnan M. Husain Credit Card Payment (Reference #D36D-7E70) | $ | 755.00 | $ | - |
| 10/24/2024 | Rent - Move In Charge: Rent | $ | 202.67 | $ | 202.67 |
| 10/24/2024 | Liability to Landlord Insurance - Move In Charge  Liability | $ | 10.50 | $ | 213.17 |
| 10/24/2024 | Liability to Landlord Insurance - Move In Charge  Admin Fee | $ | 4.50 | $ | 217.67 |
| 10/24/2024 | Rent - Move in Special - Credit for 1st mo. rent | $ | 760.00 | $ | (542.33) |
| 11/1/2024 | Rent - November 2024 | $ | 760.00 | $ | 217.67 |
| 11/1/2024 | Liability to Landlord Insurance - November 2024 | $ | 10.50 | $ | 228.17 |
| 11/1/2024 | Liability to Landlord Insurance - November 2024 - Admin Fee | $ | 4.50 | $ | 232.67 |
| 11/4/2024 | Rent - Prorated credit for move in date | $ | (12.67) | $ | 220.00 |
| 11/11/2024 | Afnan M. Husain Credit Card Payment (Reference #EAED-8BE0) | $ | 220.00 | $ | - |
| 12/1/2024 | Rent - December 2024 | $ | 760.00 | $ | 760.00 |
| 12/1/2024 | Liability to Landlord Insurance - December 2024 | $ | 10.50 | $ | 770.50 |
| 12/1/2024 | Liability to Landlord Insurance - December 2024 - Admin Fee | $ | 4.50 | $ | 775.00 |
| 12/4/2024 | Late & Other fees | $ | 60.80 | $ | 835.80 |
| 12/6/2024 | Afnan M. Husain Credit Card Payment (Reference #C7A9-BFD0) | $ | (150.00) | $ | 685.80 |
| 12/13/2024 | Afnan M. Husain Credit Card Payment (Reference #E597-E1B0) | $ | (670.00) | $ | 15.80 |
| 12/13/2024 | Afnan M. Husain Credit Card Payment (Reference #1239-7080) | $ | (267.00) | $ | (51.20) |
| 1/1/2025 | Rent - January 2025 | $ | 760.00 | $ | 708.80 |
| 1/1/2025 | Liability to Landlord Insurance - January 2025 | $ | 10.50 | $ | 719.30 |
| 1/1/2025 | Liability to Landlord Insurance - January 2025 - Admin Fee | $ | 4.50 | $ | 723.80 |
| 1/4/2025 | Late & Other fees | $ | 60.80 | $ | 784.60 |
| 2/1/2025 | Rent - February 2025 | $ | 760.00 | $ | 1,544.60 |
| 2/1/2025 | Liability to Landlord Insurance - February 2025 | $ | 10.50 | $ | 1,555.10 |
| 2/1/2025 | Liability to Landlord Insurance - February 2025 - Admin Fee | $ | 4.50 | $ | 1,559.60 |
| 2/4/2025 | Late & Other fees - Late Fee for Feb 2025 | $ | 60.80 | $ | 1,620.40 |
| 3/1/2025 | Rent - March 2025 | $ | 760.00 | $ | 2,380.40 |
| 3/1/2025 | Liability to Landlord Insurance - March 2025 | $ | 10.50 | $ | 2,390.90 |
| 3/1/2025 | Liability to Landlord Insurance - March 2025 - Admin Fee | $ | 4.50 | $ | 2,395.40 |
| 3/4/2025 | Late & Other fees - Late Fee for Mar 2025 | $ | 60.80 | $ | 2,456.20 |

# EXHIBIT F-LIST OF POST-PETITION CHARGES

4938-9985-1075, v. 1

| Date | Description | Amount | | Running total | |
|---|---|---|---|---|---|
| 4/1/2025 | Rent - April 2025 | $ | 760.00 | $ | 760.00 |
| 4/1/2025 | Liability to Landlord Insurance - April 2025 | $ | 10.50 | $ | 770.50 |
| 4/1/2025 | Liability to Landlord Insurance - April 2025  - Admin Fee | $ | 4.50 | $ | 775.00 |
| 4/4/2025 | Late & Other Fees - Late Fee for April 2025 | $ | 60.80 | $ | 835.80 |
| 5/1/2025 | Rent - May 2025 | $ | 760.00 | $ | 1,595.80 |
| 5/1/2025 | Liability to Landlord Insurance - May 2025 | $ | 10.50 | $ | 1,606.30 |
| 5/1/2025 | Liability to Landlord Insurance - May 2025 - Admin Fee | $ | 4.50 | $ | 1,610.80 |
| 5/4/2025 | Late & Other Fees - Late Fee for May 2025 | $ | 62.00 | $ | 1,672.80 |