**RECEIVED**

MAY 2 1 2025

TIME: 1:05

CLERK, U.S. BANKRUPTCY COURT
MINNEAPOLIS, MINNESOTA

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF MINNESOTA**

Afnan Mohammed Husain,                    Case No. 25-30895

Debtor                                    Chapter 7

## PETITION IN OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY

## I.    JURISDICTIONAL STATEMENT

Jurisdiction in this matter must be predicated on an explicit, voluntary waiver established

through written contract, as mandated by Statutes at Large, 14 Stat. 27. No implied consent,

presumption, or constructive submission may confer jurisdiction where none has been

affirmatively granted. This Court, as an Article I tribunal, remains constitutionally subordinate to

the judicial guarantees enshrined in Article III of the United States Constitution. The Ninth and

Tenth Amendments further prohibit the enlargement of federal jurisdiction beyond powers

delegated and enumerated. Petitioner expressly reserves all rights, immunities, and liberties

secured under the Constitution and the Statutes at Large, including the right to challenge any

jurisdictional overreach unsupported by lawful authority.

## II.    INTRODUCTION

Petitioner respectfully submits this instrument in firm opposition to the Motion for Relief from

the Automatic Stay filed by Gardner Investments, Inc. ("Landlord"), invoking the protections

guaranteed under the United States Constitution, the Statutes at Large, and established principles

of lawful possessory interest. The automatic stay, once triggered, serves as a constitutional and

statutory barrier against creditor action absent a clear and lawful showing of cause.

The lease underlying Gardner's claim was originally entered into by Petitioner and was subsequently, and lawfully, assigned to the Delani Aurora Living Trust prior to the commencement of any eviction or dispossession efforts. The trust, a distinct legal entity, became the valid leaseholder of record. At no point has Gardner produced any clause within the original lease prohibiting assignment, nor have they contested the assignment's validity through formal objection or evidentiary rebuttal. Instead, Gardner proceeded as if no assignment had occurred, pursuing action solely against Petitioner despite notice and mailing of the amended lease and assignment instrument.

Gardner now seeks to enforce an eviction judgment procured in a procedurally defective and constitutionally compromised hearing. The presiding judge, rather than adjudicating based on the record and the arguments presented, sua sponte introduced external legal authority to support Gardner's position. This conduct violated due process protections under the Fifth and Fourteenth Amendments by denying Petitioner the opportunity to be heard on the dispositive grounds used against her. The judgment has since been vacated following disclosure of the bankruptcy petition, nullifying any claim that the underlying matter was finally adjudicated prior to federal intervention.

Petitioner's continued residence at the premises is lawful and occurs solely with the authorization of the trust as leaseholder. No novation, assumption, or contractual re-formation has occurred. Physical occupancy under authorization does not constitute legal liability, and the mere fact of continued residence—absent contractual privity or consent to obligation—does not create enforceable rent liability under governing law.

## III.  FACTS & LAW

1. The lease agreement between Gardner Investments and Petitioner was executed prior to
   January 2025. In December 2024, Petitioner lawfully assigned the lease in full to the
   Delani Aurora Living Trust, a legally distinct entity with capacity to hold leasehold
   interests. The lease, as reviewed, contains no clause prohibiting assignment or requiring
   landlord consent for amendment. Gardner has failed to present any evidence rebutting the
   legal sufficiency of the assignment or establishing that the lease transfer was
   unauthorized. Their position relies solely on unsupported inferences drawn from
   Petitioner's continued residence, rather than contractual or statutory grounds.

2. Prior to the assignment, the lease was amended to conform to terms appropriate for trust
   administration and formally executed. The amended lease and assignment were mailed to
   Gardner Investments in December 2024. Gardner received the instrument and made no
   written objection, nor did they return or contest it in any form. Their silence constitutes
   legal acquiescence under settled doctrine. Moreover, no language within the lease
   prohibited assignment, nor has Gardner cited any authority or document to the contrary.
   Their failure to timely object, coupled with their conduct in disregarding the assignee,
   amounts to waiver and estoppel.

3. The amended lease and assignment (attached hereto as Exhibit A) were duly notarized
   and apostilled by the Minnesota Secretary of State, affirming both the authority of the
   executing party and the integrity of the instrument. While an apostille does not confirm
   the content, it provides conclusive proof of the procedural validity of the document under
   domestic and international standards. This further strengthens the trust's legal standing as
   assignee and rebuts any claim that the assignment lacked formality or notice.

4. Gardner initiated an eviction action on January 27, 2025, alleging nonpayment of January rent. Petitioner, in good faith, re-disclosed the trust assignment during the proceeding, having previously mailed it in December 2024. At no point in that proceeding did Gardner produce a lease clause barring assignment or present any evidence challenging the trust's status as leaseholder.

5. Notably, Gardner served the eviction summons and complaint on Petitioner individually, rather than on the Delani Aurora Living Trust—the proper leaseholder of record following the December 2024 assignment. At the time of filing, Petitioner no longer held any contractual interest in the lease, and service upon her personally constituted a legal and procedural error. This misidentification of the real party in interest further renders the proceedings invalid and supports the conclusion that the state court lacked proper jurisdiction over the dispute.

6. Despite having received the trust assignment in December 2024, Gardner proceeded to initiate an eviction action against Petitioner personally on January 27, 2025. Gardner never amended the complaint or served the Delani Aurora Living Trust, the lawful assignee and real party in interest. As a result, all legal process was misdirected at a party no longer under contract, thereby rendering the entire proceeding procedurally defective and void as to standing.

7. Instead, the presiding judge introduced, without request or argument by either party, a legal citation not included in the record. That citation became the sole foundation for the judgment rendered against Petitioner. This act violated core principles of judicial neutrality and procedural due process. As held in Tumey v. Ohio, 273 U.S. 510 (1927), the appearance or reality of judicial bias invalidates proceedings. Further, Goldberg v.

Kelly, 397 U.S. 254 (1970), requires that litigants be afforded an opportunity to address and respond to the very grounds upon which judgment is rendered. Here, no such opportunity was provided.

8. Any assertion that this judgment provides cause to lift the automatic stay is unfounded. As established in Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803), any court order inconsistent with the Constitution is void, not merely voidable. The judgment is further vitiated under Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009), which mandates reversal where even the appearance of bias infects the process.

9. Gardner's argument that it was unaware of the bankruptcy filing until after the eviction ruling also fails. The automatic stay is self-executing upon filing and does not depend upon creditor notice. As affirmed in Kalb v. Feuerstein, 308 U.S. 433 (1940), state court proceedings conducted in ignorance of the stay are void ab initio. Upon Petitioner's subsequent notice, any further attempt to enforce the judgment became unconstitutional and procedurally invalid.

10. Petitioner's inclusion of Gardner in the creditor matrix was performed in compliance with Bankruptcy Rule 1007(a), listing Gardner as a disputed and contingent claimant. This listing does not constitute an admission of liability. Rather, it reflects procedural prudence and transparency. Petitioner has at all times denied the existence of any valid leasehold obligation following the assignment.

11. Gardner's attempt to hold Petitioner personally liable for post-assignment rent fails for lack of legal foundation. There was no novation, no assumption agreement, and no renewed lease executed. The trust holds the lease, and Petitioner's continued occupancy is authorized solely by the trust. As clarified in Murray's Lessee v. Hoboken Land &

Improvement Co., 59 U.S. 272 (1856), no liability may be imposed absent lawful process and contractual obligation. Gardner has neither.

12. The trust, as leaseholder, may authorize others to occupy the premises as it sees fit. Petitioner resides lawfully under that authorization and does so without any contract or agreement with Gardner. Physical possession, standing alone, does not create liability under law.

13. While Petitioner no longer holds title to the lease, she retains a possessory interest in the premises—an interest explicitly protected by 11 U.S.C. § 362(a)(3), which bars any act to obtain possession of property from the estate or from the debtor. Courts have held that even lawful occupancy, absent legal title, is sufficient to invoke the protection of the automatic stay. Petitioner's continued, peaceful occupancy with the trust's authorization falls squarely within this protection and may not be disrupted without court permission.

## IV.   LEGAL BASIS FOR CONTINUED STAY PROTECTION

Gardner Investments' Motion for Relief from the Automatic Stay fails to establish cause under any valid interpretation of constitutional law, statutory protection, or equitable doctrine. The motion is predicated on a state court eviction judgment that was later vacated, and which itself was procured in a proceeding marked by procedural irregularity and constitutional violations. The lease assignment to the Delani Aurora Living Trust was never invalidated, and Gardner has produced no evidence establishing that Petitioner retains any contractual or legal obligation under the lease. Petitioner resides at the premises lawfully and solely through the authorization of the trust. No demonstrable or enforceable interest has been shown by Gardner to warrant disruption of the stay.

Furthermore, Gardner failed to serve the proper party in the eviction action. Once the lease was lawfully assigned in December 2024, the trust became the only entity with standing to receive legal notice regarding the leasehold. By initiating the eviction solely against Petitioner—who held no leasehold interest—Gardner commenced a proceeding against the wrong party. This defect in service deprived the trust of notice and opportunity to be heard, thereby compounding the due process violations already present in the state court action.

Granting relief under these circumstances would require the Court to disregard the constitutional defects in the underlying process, erase the legal distinction between lawful occupancy and liability, and authorize enforcement of an unproven claim. The Bankruptcy Code imposes a clear evidentiary burden on parties seeking to disturb the stay, and that burden has not been met.

- **Pre-Bankruptcy Judgment Is Not Conclusive Where Due Process Is Absent**

Gardner asserts that a pre-bankruptcy state court judgment in its favor conclusively resolved the matter. This assertion is legally and constitutionally defective. The state court ruling was entered following judicial intervention that violated core due process guarantees. The presiding judge introduced legal authority sua sponte and relied exclusively upon it in rendering judgment—absent briefing, argument, or adversarial presentation.

This conduct destroyed the appearance and reality of impartial adjudication. As reaffirmed in Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009), due process is violated where judicial bias—or the perception thereof—taints the proceedings. Such a judgment cannot form the basis of a federal order. As held in Kalb v. Feuerstein, 308 U.S. 433 (1940), judgments rendered in contravention of federal protections, particularly during the pendency of bankruptcy, are void ab initio and cannot be enforced.

- **Timing of Notice Does Not Nullify the Stay**

While Gardner argues that it did not receive formal notice of the bankruptcy filing until after judgment, this argument fails under federal law. The automatic stay is triggered upon the act of filing, not upon a creditor's awareness of the petition. Kalb makes clear that a state court acts without jurisdiction where a bankruptcy filing has occurred—even if no party raises the issue. Enforcement of the judgment after Petitioner provided notice constituted a violation of federal law.

No evidence of bad faith or strategic concealment exists. Petitioner acted in good faith and invoked constitutional protection at the earliest opportunity post-judgment. Under Statutes at Large 14 Stat. 27, no waiver of jurisdiction may be implied.

- **Lease Assignment and Continued Occupancy Do Not Create Liability**

Gardner contends that Petitioner is liable for unpaid rent merely because she remains in possession of the unit. This is legally incorrect. The lease was lawfully assigned to the Delani Aurora Living Trust. No clause within the lease prohibited assignment, and Gardner has not produced documentary evidence to the contrary. Nor has it initiated any legal proceeding challenging the validity of the assignment itself.

Petitioner resides at the premises by permission of the leaseholder. No novation, assumption of obligation, or post-assignment agreement was entered into between Petitioner and Gardner. Gardner accepted the assignment by silence and has not rebutted it through formal process. Courts have consistently held that lawful occupancy under trust or agency authorization does not generate personal liability where no contract or assumption exists.

The assertion that occupancy alone creates tenancy is a misstatement of law. Physical presence is not synonymous with contractual obligation. Gardner has not shown any new lease, rent demand under the trust, or direct contractual privity with Petitioner post-assignment.

Under Murray's Lessee v. Hoboken Land & Improvement Co., 59 U.S. 272 (1856), no person may be subjected to deprivation of property or obligation without due process and valid contractual relationship. No such showing has been made.

- **Burden of Proof Remains with Gardner**

Under 11 U.S.C. § 362(d), the burden of proving "cause" sufficient to lift the automatic stay rests squarely with the moving party. Gardner has not demonstrated:

- Legal standing to enforce a leasehold right against Petitioner individually;
- Contractual privity following the lease assignment;
- Any emergent or irreparable harm justifying extraordinary relief.

Absent a clear and lawful basis grounded in fact and enforceable legal obligation, Gardner's motion must be denied in its entirety. The stay remains in force and continues to protect Petitioner's lawful possessory interest during the pendency of this bankruptcy proceeding.

## V.   STATEMENT OF CLAIM

Petitioner asserts that the lease assignment to the Delani Aurora Living Trust was lawfully executed in December 2024, remains unrebutted, and constitutes a valid transfer of all leasehold rights and obligations. Gardner Investments has failed to produce any lease provision prohibiting assignment, has not filed a formal objection to the transfer, and has not demonstrated that

Petitioner retained any legal obligations following the assignment. As such, the assignment is legally operative and controlling.

The eviction ruling upon which Gardner relies was procured in a constitutionally defective proceeding that deprived Petitioner of due process and failed to involve the proper party in interest – the trust – resulting in a ruling issued without jurisdiction over the actual leaseholder. That judgment, having been vacated, lacks legal effect and cannot serve as a basis for extraordinary relief. Under binding constitutional doctrine, any judgment procured in violation of due process is void ab initio and without enforceable authority in federal court.

Petitioner is not the lessee of record, has assumed no post-assignment obligations, and resides at the premises solely with the trust's authorization. There exists no novation, privity, or post-transfer agreement that would support Gardner's claim to collect rent or enforce possession directly against Petitioner.

Any enforcement of the vacated judgment would violate the supremacy of federal constitutional protections, particularly the automatic stay under 11 U.S.C. § 362(a), which preserves the status quo for debtors in possession. Petitioner's peaceful occupancy constitutes a protected possessory interest, and no showing has been made to justify lifting the stay under § 362(d).

Accordingly, Petitioner requests that the Motion for Relief from Automatic Stay be denied in its entirety, and that the Court affirm the continued application of the stay as to the premises located at 1905 Stevens Avenue #203, Minneapolis, Minnesota, pending full and lawful adjudication of any disputed claims in accordance with the Constitution and Statutes at Large.

## VI.   CONDITIONAL FINALIZATION

This Court sits not only as an adjudicator of procedural claims under the Bankruptcy Code, but as a constitutional safeguard against the misuse of judicial and creditor power. To grant relief from the automatic stay under the circumstances presented would be to lend federal authority to an eviction judgment procured in violation of due process, based on an unrebutted presumption rather than evidence, and directed against a party who no longer held contractual obligation.

The stay, as enacted by Congress, is not a mere procedural pause. It is an essential constitutional buffer that ensures no debtor may be summarily dispossessed, coerced, or deprived without legal cause duly established in open court. Petitioner's possessory interest, though no longer grounded in a leasehold title, remains protected as a matter of statutory law and equity, particularly where no showing has been made that her continued occupancy violates any binding agreement or lawful prohibition.

Gardner's motion does not allege fraud, emergency, or irreparable injury. It relies instead on a procedurally tainted and now-vacated state court judgment, combined with presumptions about occupancy and liability that are unsupported by contract or statute. Such a basis cannot meet the standard of "cause" required under 11 U.S.C. § 362(d). If accepted, it would open the door to constitutional dilution, creditor overreach, and judicial inconsistency across forums.

This case presents not merely a question of possession, but of legal boundaries—what may or may not be done to a party under federal protection when due process has not been observed, and when the factual and contractual landscape has materially changed. Relief from stay is not automatic; it is exceptional. Gardner has failed to earn it.

Petitioner therefore urges this Court to deny the Motion for Relief in full and to preserve the integrity of the automatic stay as a structural constitutional safeguard, not only for the protection of debtors but for the legitimacy of the federal forum itself.

## VII.  CONSTITUTIONAL AUTHORITIES SUPPORTING STAY PROTECTION

- **Tumey v. Ohio**, 273 U.S. 510 (1927) – Judicial decisions rendered in the absence of neutrality violate due process. Applied here: the state court's sua sponte legal citation denied Petitioner a fair proceeding.

- **Goldberg v. Kelly**, 397 U.S. 254 (1970) – Procedural due process requires that parties be heard on the specific grounds used against them. The eviction ruling was based on unbriefed legal grounds, rendering it void.

- **Marbury v. Madison**, 5 U.S. (1 Cranch) 137 (1803) – Acts and judgments contrary to the Constitution are void. Petitioner invokes this principle in challenging the state court's ruling.

- **Murray's Lessee v. Hoboken Land & Improvement Co.**, 59 U.S. 272 (1856) – Property cannot be seized without due process. Applied here: no lawful process was followed to justify dispossession of Petitioner.

- **Caperton v. A.T. Massey Coal Co.**, 556 U.S. 868 (2009) – Even the appearance of judicial bias invalidates a proceeding. The judge's conduct in adopting and applying outside legal reasoning without notice or response supports this doctrine.

- **Kalb v. Feuerstein**, 308 U.S. 433 (1940) – Once a bankruptcy petition is filed, state court actions taken in disregard of the automatic stay are void ab initio. Gardner's enforcement posture violates this principle.

**WHEREFORE**, Petitioner respectfully requests that this Court:

1. Deny in full Gardner Investments' Motion for Relief from the Automatic Stay;

2. Reaffirm the continuing operation and applicability of the automatic stay as to Petitioner's lawful possessory interest in the premises located at 1905 Stevens Avenue, Apartment 203, Minneapolis, Minnesota;

3. Award such other and further relief as this Court may deem just, equitable, and proper under the Constitution and the Statutes at Large.

**CERTIFICATION**

Certified under Statutes at Large and Universal Law, this 21st day of May, 2025.

**DECLARATION**

I, Afnan Mohammed Husain, declare under penalty of perjury under the laws of the United States, and in solemn affirmation before God, that the factual statements contained in this Petition are true and correct to the best of my knowledge, understanding, and belief.

Executed on this 21st day of May, 2025, in Minneapolis, Minnesota.

Signature: _____

Printed Name: Afnan Mohammed Husain

# State of Minnesota - Secretary of State

This Certificate is not valid for use anywhere within the United States of America, its territories or possessions.

## Apostille
(Convention de La Haye du 5 Octobre 1961)

1. **Country (Pays): United States of America**
   **This public document (Le présent acte public)**

2. **has been signed by (a été signé par) Sara J Harkins**

3. **acting in the capacity of (agissant en qualité de) Notary Public, State of Minnesota**

4. **bears the seal / stamp of (est revêtu du sceau / timbre de)**
   **Sara J Harkins, Notary Public, State of Minnesota**

## Certified
## Attesté

5. **at (á) St. Paul, Minnesota**

6. **Date (Date) 12/20/2024**

7. **by (par) Secretary of State, State of Minnesota**

8. **File No (Sous nº) 1524188400032**

9. **Seal / Stamp (Sceau / Timbre):**

10. **Signature (Signature):**





Steve Simon
Secretary of State
State of Minnesota

This Apostille only certifies the authenticity of the signature and the capacity of the person who has signed the public document, and, where appropriate, the identity of the seal or stamp which the public document bears.
This Apostille does not certify the content of the document for which it was issued.
To verify the issuance of this Apostille, see **https://apostille.sos.mn.gov.**
**This certificate does not constitute an Apostille under the Hague Convention of 5 October 1961, when it is presented in a country which is not a party to the convention. In such cases, the certificate should be presented to the consular section of the mission representing that country.**

Cette Apostille atteste uniquement la véracité de la signature, la qualité en laquelle le signataire del'acte a agi et, le cas échéant, l'identité du sceau ou timbre dont l'acte public est revêtu.
Cette Apostille ne certifie pas le contenu de l'acte pour lequel elle a été émise.
Cette Apostille peut être vérifiée à l'adresse suivante:**https://apostille.sos.mn.gov.** Ce certificat ne constitue pas une Apostille en vertu de la Convention de La Haye du 5 Octobre 1961, lorsque présenté dans un pays qui n'est pas partie à cette Convention. Dans ce cas, le certificat doit être présenté `a la section consulaire de la mission qui représente ce pays.

## ASSIGNMENT OF LEASE

This Assignment of Lease (the "Assignment") is made and entered into on **12/5/2024**, by and between:

**Assignor:**

**AFNAN HUSAIN**
1905 Stevens Ave , SO. 203
Minneapolis, MN 55403

**Assignee:**

**Delani Aurora Living Trust**
P.O. Box 4272
Mankato, MN 56002



Property: **Gardner Investments, Inc.**
1905 Stevens Ave , SO. 203
Minneapolis, MN 55403

**Lease:**
The lease agreement dated October 24th 2024 (the "Lease"), That was Amended on October 30th 2024 by and between **GARDNER INVESTMENTS, INC** ("Lessor") and **AFNAN HUSAIN** ( "Lessee"), concerning the property described above.

**Assignment:**

1.  Assignment of Lease: Assignor hereby irrevocably assigns, transfers, and conveys all of Assignor's right, title, and interest in and to the Lease, including all rights and obligations thereunder, to Assignee and delivers to the Trustee(s) of the Trust all their interest in the property described above, to be held and administered according to the terms and conditions of the Trust.

2.  Assumption of Lease: Assignee accepts the assignment of the Lease and agrees to perform all the terms, covenants, and conditions of the Lease required to be performed by the lessor thereunder.

3.  Amendments: This Assignment acknowledges and incorporates the amendments made to the Lease Agreement on December 5th, 2024, which are attached hereto and made part of this Assignment New terms were agreed upon.

4.  Consent of Lessee: The Assignor has obtained the consent of the Lessee to this assignment and to the assumption of all obligations under the Lease by Assignee.

5.  Effective Date: This Assignment shall be effective as of December 5th, 2024.

6. Indemnity: Assignor agrees to indemnify and hold harmless Assignee from any claims or liabilities arising from or related to the Lease prior to the effective date of this Assignment.

**Governing Law**
This Assignment shall be governed by and construed in accordance with the laws of the state of Minnesota.

**Acknowledgment by Trustee**

The Trustee(s) of the Trust hereby acknowledge receipt of the property and accept the assignment of such property into the Trust.

IN WITNESS WHEREOF, the parties hereto have executed this Assignment as of the day and year first above written.

**Assignor:**
By: _____
AFNAN HUSAIN
Principal

**Assignee (Trust): Delani Aurora Living Trust**
By: _____
William Malik Harris, TTEE

                        **Witnesses**

_____        _____
Christopher Turner                                   Corey Jones

Notary Acknowledgment.

State of Minnesota
County of Nicollet

On December 5th , 2024 before me, the undersigned notary public, personally appeared AFNANA HUSAIN, known to me (or proved to me) to be the individual who executed the foregoing instrument, and acknowledged that they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____ .
Notary Public Signature



Seal:
Sara J Harkins
Notary Public
Minnesota
My Commission Expires Jan. 31, 2029

...dner Investments, Inc.

...905 Stevens Ave • Suite B • Minneapolis, MN 55403
(651) 777-3612

*[stamp:]* ...presentation to the United States Treasury, for redemption or in exchange for securities of a new issue, in accordance with written instructions submitted by...



**AMENDED**

# 1. Residency and Financials

## 1.1  PARTIES AND OCCUPANTS

This Lease Contract is between you, the undersigned Resident and Co-signer(s):

Afnan M. Husain

and us, the Owner / Agent:

Gardner Investments, Inc.

1905 Stevens Ave
Suite B
Minneapolis, MN 55403

You have agreed to rent the property located at:

1905 Stevens Ave. SO.
203
Minneapolis, MN 55403

for use as a private residence only. The terms "you" / "your" / "Tenant" / "Lessee" refer to all Residents and Co-signer listed above. The terms "we" / "us" / "our" / "Landlord" / "Lessor" / "Management" refer to the Owner / Agent listed.

The apartment will be occupied exclusively by the Resident(s) listed above. The Landlord must approve unauthorized occupants living in the premises for longer than 48 consecutive hours.

## 1.2  LEASE DURATION

The terms of this tenancy shall commence on **10/24/2024** and end on **11/30/2028**. The Tenant reserves the right to change the terms and condition of the tenancy at any time commencing with the ending date of this lease.

## 1.3  RENTS AND CHARGES

You shall pay a net

| | |
|---|---|
| Rent | $0.00 |
| Liability to Landlord Insurance | $0.00 |
| Admin Fee - Liability to Landlord Insurance | $0.00 |
| **Total:** | **$0.00** |

per month for rent which is comprised of Unit Rent, Pet Rent and Parking/Garage (if applicable).

The first month's rent and/or prorated rent shall be due prior to move-in unless specified as other in writing by Landlord. In addition Tenant shall pay the one time charges of

| | |
|---|---|
| Tenant Security Deposits | $755.00 |
| **Total:** | **$755.00** |

at move in.

Every month thereafter, Tenant must pay rent on or before the 1st day of each month  The following late fees will apply for payments made after the 1st day of the month:

Late fee rule:  8 Percent of All Charges There will also be a $50.00 administrative service fee added to the account after the 9th day of the month.  Tenant acknowledges that the administrative fee is not imposed as a late fee, but as payment to the Landlord to offset administrative expenses and other costs in dealing with the unpaid rent and other monies not paid on time. The administrative fee shall in no way be deemed a late fee.

A charge of $45 will apply for every returned check or rejected electronic payment plus the amount of any fees charged to the ~~y~~ any financial institution as a result of the check not being honored, plus any applicable late fee charges. If Tenant does not pay ~~rent~~ Tenant will be delinquent and all remedies under this Lease Contract will be authorized.

There shall be a $0.00 processing fee added to each check or money order tendered, no cash shall be accepted.

~~We may change the terms of this lease in accordance with applicable law, including, rent increases and other modifications to the terms of the contract.~~

## 1.4  SECURITY DEPOSIT

The total security deposit (performance deposit / damage deposit) at the time of execution of this Lease Contract for all Residents in the apartment is $755.00 , due on or before the date this Lease Contract is signed. Landlord will hold the security deposit for the term of the tenancy and, upon termination of the tenancy, reserve the right to use the security deposit, or portions thereof, to cover any charges related to the performance of this Lease Contract, including, but not limited to: cleaning, repair of damages, unpaid rent, late fees, and returned check fees. The security deposit less any deductions will be returned to the Tenant after move out in accordance with Minnesota Statute 504B.

## 1.5  UTILITIES

Landlord will pay for the following utilities:

Heat and water trash recycling

Tenant agrees to promptly pay all bills for utilities and services Tenant is responsible for on the premises. Tenant agrees not to waste or abuse any utilities or services furnished by Landlord, or permit guests or others to do so. Windows and storm windows must be kept in a closed position from November 1st to April 1st and Tenant supplied air conditioner units must be removed during this time. During this time, the windows may be opened for a five minute period of time to freshen the Apartment. If damage results from a window opened longer than this time, the Tenant will be responsible for the damage. Tenant may not interfere in any manner with the portion of either heating or lighting apparatus in the Apartment or building.

## 1.6  INSURANCE

RENTER'S INSURANCE: Resident agrees to purchase and maintain liability insurance as it pertains to the Lease agreement between the parties that includes a minimum of $50,000 in liability coverage, Tenants/Renters/Homeowners Insurance Form HO-4, with an insurance carrier duly
licensed in the State of the location of the leased premises, during the entire term of this Lease and any subsequent periods to protect against injuries or property damage and rent loss. Resident must purchase and provide Management with proof of renters insurance in accordance with
the terms and conditions of this Lease in the form of a Certificate of Insurance or Surety Bond.

Tenant acknowledges and agrees to Management insuring the premises if Tenant has not provided proof of insurance at the signing of the lease, and Tenant agree to pay for this insurance plus a $4.50 administration fee monthly until the Tenant provides proof of their own insurance policy. Tenant agrees to pay the insurance and administration fee on a monthly basis with their rent payment. This requirement is in place to protect Management and the Owner. ~~Resident may bring no suit or claim against Management for a failure by another resident to have liability insurance that might compensate Resident for damage or loss caused by another Resident. Resident is advised that Management's liability insurance does not protect Resident or Residents personal property against loss or damage caused by loss or casualty or the wrongful acts of any third party, or provide Resident with moving expenses or temporary lodging in the event of any accident or casualty that interrupts Resident's use of the Apartment/Townhome or requires Resident to vacate.~~

FLAME FREE ENVIRONMENT: Tenant agrees that they will not use or allow in their premises the use of any flamed device including but not limited to; candles, incense, lighters, torches, and burners. Violation of this requirement will result in a Tenant Infraction and a $200.00 fine.

## 1.7  KEYS AND LOCKS

You will be provided the following keys:

Security door key, unit door key, and mail box key (if applicable)

All deadlocks, keys, window latches, doorknobs and any additional device required by local government ordinance, will be in working order when when Tenant moves in.

~~Tenant shall be liable for the entire cost all of key and lock replacements. Tenant shall not change the locks or add a deadbolt lock without prior written consent of Landlord.~~

~~There is a lockout charge of $75.00 - $150.00.~~

~~At will be charged $100.00 per key for unit or mailbox and $150.00 per security door key or FOB that cost for any reason or if not returned upon move out.~~

All keys must be returned to Landlord upon move out. Tenant will be charged for the cost of new locks and keys that are not returned.

By initialing below, you acknowledge and agree to the terms in Section 1.



X _____
Afnan M. Husain

# 2. Policies and Procedures

## 2.1 COMMUNITY POLICIES OR RULES

Tenant and all guests and occupants must comply with any written community rules and policies attached to this lease and made a part thereof by reference, including instructions for care of the building and any of Landlord's property. Any and all rules are considered part of this Lease Contract. Landlord may make reasonable changes to written rules, effective immediately, if distributed and applicable to all units in the community. The attached Handbook / addenda, for all intent and purposes shall constitute an extension of / addenda to this lease.

## 2.2 RESIDENT SAFETY AND PROPERTY LOSS

Tenant and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors, keyed deadbolt locks, keyless deadbolts, window latches, and other security or safety devices. You agree to make every effort to abide by the rules and guidelines in this Lease Contact.

**Casualty Loss**

Landlord is not liable to any Tenant, resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law.

**Smoke Detectors**

The Unit is equipped with smoke and carbon monoxide detectors in accordance with state or local government regulations. Tenant must immediately report smoke-detector malfunctions to Landlord. Neither Tenant nor others may disable smoke detectors. Tenant will be liable to others and Landlord for any loss, damage, or fines from fire, smoke, or water if that condition arises from disabling or damaging the smoke detector or from Tenant's failure to replace a dead battery or report malfunctions to Landlord. If Landlord discovers that Tenant(s) have removed, deactivated, or disabled a smoke detector Tenant will be charge $20.00 to reattach the smoke detector and $85.00 or more to replace a damaged or missing smoke/CO detector.

**Safety and Crime Free**

Tenant or any guest or resident under Tenant's control, should not engage in any criminal activity in the unit or community.

In case of emergency, fire, accident, smoke or suspected criminal activity, dial 911 or call emergency personnel. You should then contact our representative at the On Call line at 612.400.2974. Unless otherwise provided by law, Landlord is not liable to Tenant or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes.

## 2.3 PARKING

Parking is reserved for Residents only and use may require a permit and an additional charge as outlined in this lease for that right. No guest parking is allowed. You will park on the property at your own risk. We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. We may have unauthorized or illegally parked vehicles towed away at the vehicle owner's expense. Vehicles are prohibited from parking on the premises if they are inoperable, have no current license, take up more than one parking space, are parked in a marked handicap space without proper handicap insignia, block other vehicles from existing, are parked in a space not dedicated to parking, including, but not limited to, grass, sidewalks, patio, and fire lanes. resident agrees to cooperate with management in scheduling snow remove (if provided) and maintenance of parking lot or garage. ~~Vehicles parked illegally will be towed away at the vehicle owner's expense.~~

## 2.4 PETS

Pets (including mammals, reptiles, birds, fish, and insects) are not allowed unless otherwise stated in wiring by Landlord. Tenant remove an illegal animal within 24 hours of notice from Landlord, otherwise Tenant will be considered in violation of this Lease Contract. Service / Companion animals are allowed by Landlord upon completion and approval of Landlord's paperwork.

If Tenant or any guest or occupant violates animal restrictions (with or without Tenant's knowledge), Tenant will be subject to additional charges such as a $200.00 illegal pet fine and additional rent, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during the term of occupancy (with or without Landlord's consent), Tenant will be charged for de-fleaing, deodorizing, and shampooing carpet in the unit.

## 2.5 LEAD PAINT DISCLOSURE

Tenant acknowledges notification that Landlord is not aware of any lead-based paint hazard present in the building, and that there are no known records or reports pertaining to lead based paint hazards in the building which the Landlord is aware of.

By initialing below, you acknowledge and agree to the terms in Section 2.

X  _____
  Afnan M. Husain

# 3. Responsibilities

## 3.1 TENANT PROMISES

**TENANT PROMISES:** (a) Not to damage or misuse the premises, or allow Tenant's guests or others to do so; (b) Except with the prior written consent of Landlord not to make any alterations, additions, or improvements (including repainting or wallpapering) on the premises, remove any fixtures or appliance, change the existing locks on the premises, or drive nails, screws, or other objects into or otherwise deface the ceilings, woodwork, or floors in the premises; (c) to continuously occupy the premises and keep clean and neat; (d) Not to permit any loud, boisterous, unruly, or thoughtless conduct on the premises so as to disturb the right of others to peace and quiet; (e) To use the premises only as a private residence, and not in any way that is unlawful or dangerous or which would cause a cancellation, restriction, or increase in premium on insurance on the premises; (f) Not to use or store on or near the premises any flammable or explosive substance; (g) To promptly notify Landlord in writing of any condition on the premises which requires repair, is dangerous to the health or safety of Tenant or others, or which may do damage to the premises or waste any utilities; (h) To promptly pay all rents, services charges, or other amounts when due and not to withhold rent for any cause; (i) Not to use or occupy the premises, (or permit any use) contrary to any applicable statute, rule, ordinance, order, or regulation, and to full comply with all of the same. Reasonable use of small nails (but not tape or adhesive) in the wall is permitted to hang pictures and decorations (j) use any flammable appliance on any balcony, deck, or porch.

## 3.2 MISCELLANEOUS TENANT DUTIES

Tenant agrees not to leave bottles, newspapers, packages, bicycles, sleds, or other property of the Tenant's in the common hallways, stairs, basement, or yard. The sidewalks, entrances, passages, basement, stairways, and halls may not be obstructed or used for any purpose other than entry to or exit from the Apartment. The areas outside the Apartment forming a part of the buildings, or grounds, may not be used in any way except as designated by Landlord for use in common by Tenants of the building. Tenant agrees not to smoke, eat, or consume alcoholic beverages in any common area of the property. Tenant agrees not to sit, loiter, or stand in or about any common area of the building or grounds.

## 3.3 TRASH REMOVAL

All trash and recycling must be in bags and placed into the dumpster. You will be charged $35.00 and receive a citation for any bag or debris left in the hallway or anywhere outside of the dumpster and receive an infraction. The dumpster is only for normal every day household waste and no other material may be placed in the dumpster including furniture. Tenant will be charged for excessive waste caused by Tenant disposing of personal items at move in and move out. Tenant will also be charged for putting normal household garage into the recycling bins $35.00 per bag for management's cost to move trash out of recycling.

## 3.4 CONDITION OF PREMISES AND ALTERATIONS

Tenant accepts the apartment, fixtures, and furniture as is, except for conditions materially affecting the health or safety of ordinary persons.

...rd disclaims all implied warranties. Tenant shall maintain the premises in good, clean, and habitable condition throughout the ...ncy. Tenant agrees not to alter, damage, or remove Landlord's property, including alarm systems, smoke detectors, furniture, telephone and cable TV wiring, screens, locks, and security devices. You may not paint or make any permanent alteration without Landlord's written consent.

## 3.5 REQUESTS, REPAIRS, MALFUNCTIONS

Tenant shall report any damage or problem immediately upon discovery or may be held responsible for the cost. Landlord's complying with or responding to any oral request regarding security or non-security matters does not waive the strict requirement for written notice of maintenance issues under this Lease Contract. Tenant must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to the property, or your health, or safety. Tenant will respond in accordance with state law and the Lease Contract to repair or remedy the situation, as necessary. Landlord may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work.

## 3.6 RIGHT OF ENTRY AND INSPECTIONS

Landlord has the right to enter the premises at all reasonable hours, with proper notice, for the purpose of inspection, responding to Tenant requests, making repairs and/or preventative maintenance, pest control, showing to prospective residents, buyers, loan officers or insurance agents, and for any emergency situations that may arise.

## 3.7 MOVE-OUT

NOTICE PERIOD AND REQUIREMENTS. ~~Landlord and Tenant must give a two month plus one full day advance notice from the last day of the month, (the notice) to the other party to terminate this Lease. This lease cannot be terminated prior to the end of the lease term indicated above. A notice to terminate the Lease is effective only if it includes the two month and one day advance notice and is received by the end of the month and has as the termination date the last day of a calendar month. Even if this lease becomes a "month-to-month" lease, Landlord or Tenant must give the aforementioned notice to terminate the lease. All notices by Tenant to Landlord must be in writing and delivered to the location where rent is to be paid and is not valid until received by Landlord. Notice by Landlord to Tenant, for any reason, may be given by any of the following methods: (a) regular mail, (b) certified mail, return receipt requested; (c) personal delivery to any Lessee; (d) personal delivery at the Premises to any Occupant or (e) affixing the notice to the door of the Premises (f) email from the manager's email account. The notice period stated herein of this lease shall constitute the notice period required by Landlord and Tenant for all changes, deletion of parking, garage rental, (in on a month-to-month lease) or any other fees or services made part of the original Lease or added thereafter.~~

~~Surrender, abandonment, and eviction ends Tenant's right of possession for all purposes and gives Landlord the immediate right to: clean up, make repairs in, and re-lease the apartment; determine any security deposit deductions; and remove property left in the apartment. Surrender, abandonment, and eviction affects Tenant's rights to property left in the apartment. Surrender, abandonment, and eviction do not affect Landlord's mitigation obligations.~~

### Cleaning

Tenant must thoroughly clean the unit, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. If Tenant does not clean adequately, Tenant will be liable for reasonable cleaning charges.

### Charges

~~Tenant is liable for the following charges, if applicable: unpaid rent; unpaid utilities; un-reimbursed service/late charges; repairs or other damages, excluding ordinary wear and tear; replacement cost of our property that was in or attached to the apartment and is missing or damaged; un-returned keys; missing or burned out light bulbs; removing or re-keying unauthorized security devices or alarm systems; agreed reletting charges; packing, removing, or storing property removed or stored; removing illegally parked vehicles; animal related charges; government fees or fines against us for violation (by Tenant, Tenant's occupant, or guest) of local ordinances relating to smoke detectors, false alarms, recycling, or other matters; late payment and returned check charges, plus attorney's fees, court costs, and filing fees actually paid; and other sums due under this Lease Contract. Tenant will also be charged our cost for extermination if it is discovered that Tenant's unit has become infested with bedbugs.~~

### Deposit Refund

Tenant's security deposit will be refund after move out (less lawful deductions) and an itemized accounting of any deductions pursuant to the lease and Minnesota Statute 504B.

## 3.8 AIR CONDITIONING

Tenant shall not install any air conditioner unit or washer/dryer without landlord's written permission.

## 3.9 INITIAL CONDITION

Tenant acknowledges having fully examined the premises and agrees that they are now satisfactory and in tenantable and clean condition,

and that there are no existing damages except as stated on the Move-In Inspection Report. Tenant acknowledges that by allowing photo to be taken by Landlord's Agent and attached to the electronic move in inspection said report fairly represents the condition Premises at the time of move. Tenant is renting the Premises with the existing personal property, if any, and without any obligation representation by Landlord to make any alteration, improvements, or repairs on the premises during the Lease term.

## 3.10  RE-RENTAL FEE

Tenant understands that she will be responsible to Landlord for the cost of re-renting the apartment for premature abandonment of the apartment or failure to provide proper notice to vacate including but not limited to costs to advertise, show, and the administrative costs associated therewith.

## 3.11  VACATING

Tenant agrees to vacate the Premises on or before 12:00 (Noon) on the termination date of this Lease, or 12:00 (Noon) on the last day of the month of any renewal, or extension as provided in this Lease. If Tenant fails to vacate at the required date and time, Tenant shall be liable to Landlord for any and all losses incurred by Landlord, such as loss of rent, court costs and attorney's fees In addition, Tenant agrees to pay a holding over fee of $150.00 per hour for each and every hour or portion thereof that tenant has not vacated the Premises after 12:00 (Noon) on the last day of the calendar month of which the tenant has paid rent.

## 3.12  DUTY TO PAY RENT AFTER EVICTION

If Tenant is evicted because Tenant violated a term of this Lease, Tenant must still pay the full monthly rent until, (a) the unit is re-rented, (b) the date the lease ends, or (if the Lease is month-to-month, the next notice period ends. If the unit is re-rented for less than the rent due under this Lease, Tenant will be responsible for the difference until the Date this lease ends, or if the lease is month-to-month, until the end of the next notice period.

## 3.13  TENANT REIMBURSEMENTS

Tenant agrees to reimburse Landlord promptly for any loss, damage, or cost of repairs, or service (including plumbing trouble, damage from windows or doors left open, or water damage) cause by negligence or improper use by Tenant, Tenant's agents, family, or guests. Tenant agrees to pay all costs incurred by Landlord incidental to any abandonment of the premises or other breach of the Lease by Tenant, such as costs incurred in attempting to re-rent premises, including advertising and other costs. Tenant agrees to pay for all of Landlord's attorney fees and costs resulting from any legal proceeding for eviction, unpaid rent, or any other debt or charge. These reimbursements are due when Landlord or its representatives make demand on Tenant. Landlord's failure or delay in demanding any of the reimbursements, services, or returned check charges, or other sums due from Tenant shall not be deemed a waiver; and Landlord may demand them at any time, whether before or after Tenant vacates the premises. Tenant also agree to reimburse Landlord if it is discovered that the unit has become infested with bedbugs the entire cost of the extermination fees.

## 3.14  MONTH TO MONTH FEE

Tenant agrees to pay a $300.00 short term lease fee for each month or portion thereof that Tenant(s) reside in the premises after the end of the lease where Tenant and Cosigner have not signed a new lease offered by Landlord.

By initialing below, you acknowledge and agree to the terms in Section 3.

X _____*A H*_____
   Afnan M. Husain

# 4. General Clauses

## 4.1  RELEASE FROM LEASE CONTRACT

Unless Tenant is entitled to terminate this Lease Contract, Tenant will not be released from this Lease Contract for any reason, including, but not limited to, voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

Tenant is allowed to buy out the Lease with the following terms: Tenant must give a written notice of at least one calendar month plus one day notice and pay rent for that month during the notice period. Tenant must also pay a fee equal to three month's worth of rent as liquidated

~~ges if the Lease has (6) or more months until its expiration after notice to vacate has been given, or two month's equivalent of rent as~~ ~~lidated damages if the Lease will expire in (5) or less months after the notice period as valuable consideration for releasing Tenant from~~ ~~he Lease.~~ This will only be allowed if the account is current and all balances paid and the lease had not been violated or Tenant has had any lease violations. Unless otherwise agreed to, the above described lease termination fee is due immediately upon delivery of the written notice to vacate. Notice to vacate will not be valid until the termination fee is paid in full.

Subletting is not allowed under any circumstances.

## 4.2 DEFAULT BY RESIDENT

~~Tenant will be in default if Tenant or any guest or occupant violates any terms of this Lease Contract including, but not limited to the following violations: failure to pay rent or other amounts owed when due; Tenant or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, or engages in dangerous behavior, regardless of whether or where arrest or conviction occurs; Tenant abandons apartment; Tenant provides false or fraudulent documentation requested by Landlord; Tenant or any occupant is arrested, convicted, or given deferred adjudication for a felony offense; any illegal drugs or paraphernalia are found in the apartment; Tenant or any guest or occupant engages in any prohibited conduct; or Tenant or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government.~~

**Other Remedies**

~~If rent is delinquent, Tenant immediately forfeits all rights to occupy the apartment any longer, and if you have not vacated the unit by the date specified in the Lease Contract termination notice, Tenant is guilty of a misdemeanor. Each day of Tenant's unlawful presence in the apartment constitutes a separate offense. Landlord may report unpaid amounts to credit agencies. Upon Tenant's default and early move-out, Tenant will pay Landlord any amounts stated to be rental discounts, in addition to other sums due. Upon Tenant's default, Landlord has all other legal remedies, including suit for Lease Contract termination, possession, damages, rent, and all other monies due. Landlord may turn any returned checks over to law enforcement officials for prosecution according to law.~~

## 4.3 CONTRACT TERMINATION AND DISPUTE

~~This Lease Contract may only be amended, waived, or terminated by Landlord's representatives in writing. Any oral promises, representations, or agreements by our representatives shall not be considered legally binding. No action or omission of Landlord's representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Landlord's not enforcing or belatedly enforcing written notice requirement, rental due dates, acceleration, liens, or other rights is not a waiver under any circumstances.~~

**Waiver of Jury Trial**

~~To minimize legal expenses and, to the extent allowed by law, Landlord and Tenant agree that a trial of any lawsuit based on statute common law, and/or related to this Lease Contract shall be to a judge and not a jury.~~

**Force Majeure**

~~Landlord shall be excused from performance of obligations if prevented from fulfilling such obligations by an act of God, strikes, epidemics, war, acts of terrorism, riots, or other occurrence, which is beyond our control.~~

## 4.4 RIGHT TO INSPECTION

You shall have the right but not the obligation to a move out inspection.

## 4.5 PARTIAL PAYMENT OF RENT

~~PARTIAL PAYMENT OF RENT; Landlord reserves the right to commence Unlawful Detainer Proceeding against Tenant for unpaid rent, even if partial payments of rent have been received for the month(s) sited in said proceedings.~~

## 4.6 NO SMOKING POLICY

Tenant agrees and acknowledges that the premises is to be occupied by Tenant and members of Tenant's household have been designated as a smoke-free living environment. Tenant, guests, and members of Tenant's household shall not smoke, including e-cigs and vaping, anywhere in the unit rented by Tenant, where the Tenant's dwelling is located, or in any of the common areas or adjoining grounds of such building or other parts of the rental community, nor shall Tenant permit any guests or visitors under the control of Tenant to do so. Any Tenant or person under Tenant's control caught smoking will be fined a $200.00 fee and receive a lease violation notice.

## 4.7 ICE AND SNOW NOTICE

**SNOW AND ICE NOTICE**

Landlord will make a good-faith effort to keep walkways and common areas in a reasonably safe condition by providing, at minimum, the snow and ice-related services required by law. Additional measures will be taken at the sole discretion of the Landlord. Landlord will

provide Tenant a schedule of the time and manner in which measures or services are to be taken or provided, if any. Notwithstanding the foregoing, the accumulation of snow and ice on the walkways and common areas poses a known risk that may affect the condition of the property; requiring Tenants, and their guests, to use caution when traversing the property. By signing this agreement, Tenant hereby warrants that he/she has been put on notice of a known dangerous condition of the property created by the accumulation of new and ice on the walkways and common areas of the property, and Tenant, and their guests, will use the requisite level of caution and reasonable care when conducting activities on the property. Tenant further agrees to hold harmless Landlord for damages caused by Tenants failure to use the requisite level of caution and reasonable care when on the property. The snow and ice notice serves to put Tenants and their guests on notice of a possible dangerous condition.

## WAIVER OF LIABILITY

Landlord will provide snow and ice management services to walkways and common areas as required by state law. Landlord will be sole determinant of the type and amount of additional snow and ice management services, if any, to be provided to the walkways and common areas of the property. In no event shall Landlord, his heirs, successors or assigns be held liability to Tenant, his heirs, assigns, invitees or licensees for Damages to persons or property in connection with the snow and ice-related services provided, regardless of any action or inaction on the part of the Landlord or his assigns, or failure, breakdown, malfunction or insufficiency of the services provided.

Nothing contained in this Lease will require Landlord to provide snow and ice management services to areas under the exclusive control of the Tenant, or additional services to common areas beyond those required by law. Tenant assumes all responsibility and liability for removal of snow and ice from areas under Tenant's exclusive control, and hereby agrees to defend and indemnify Landlord, his, successors and assigns in any action for damages arising from Tenant's failure to maintain those areas under Tenant's exclusive control.

Tenant further agrees to release, indemnify, defend, and forever discharge Landlord, his heirs, successors and assigns from all liability, claims, demands, damages, costs, expenses, actions and causes of action in respect to death, injury, loss or damage to property, third-parties, or a third party's property arising from negligence or any other conduct constituting less than gross negligence, recklessness, willful or wanton conduct, or intentional or illegal acts on the part of the Landlord or his assigns.

## 4.8 RESIDENT INFORMATION, COMMUNICATION, AND MEDIA RESPONSE

Resident is advised, and agrees, that Management may be asked or required to provide resident names or contact information in connection with applicable legal requirements, such as

any census inquiry on local rental licensing ordinances, to assist first responders, or to vendors or businesses that may be working with Management to assist in resident notifications, communications, setting up software systems, email notifications, payment systems or other tenant and property services. Management will not disclose or provide anything other than the names of Residents and household members, and tenant contact information.

In circumstances where there is a dispute or disagreement between Management and any Resident, Management will only deal with the Resident, or any licensed attorney or Government agency acting on behalf of the Resident, and will not deal with third-party or advocate without Resident participating in any discussion or communication or other

proper written organization. In the events that the Resident takes action to place information about Management, or any dispute with the site owner, Management staff, our contractors, or the rental community property in any social media posting, or other public place, or makes comments or statements that Management believes are disparaging, are not completely true, or would cause harm to Management's business reputation, Management shall be entitled, and Resident agrees, consents, and acknowledges that Management may respond to any statement by posting initiated by Resident to air a grievance or share information about a dispute or conflict with Management on some public platform, including any social media posting, web site, message board or similar. Management should be entitled to respond to any reports that it believes are false, inaccurately portray the financial or legal responsibilities of the Resident, or that do not fully and fairly reflect the position of both parties, and the terms of the parties lease, and community rules or other laws or agreements by responding to such report with specific information relating to any dispute including financial information about any damages, obligations, or amounts owed by Resident to Management, by providing photos of any damage or disputed conditions, and may include excerpts from the parties' lease lease and other communications, to allow Management an equal opportunity to fairly and fully respond to any statement of Resident, or action by Resident, to air a grievance or dispute or other issue between Management and Resident and/or Resident's guest, or third parties in any public forum or other social media site,

Resident expressly waives any expectation or right of privacy, or other claim of

confidentiality, relating to the relationship, agreements, and communications between Management and Resident should Resident take steps to disclose or post information to other third parties whether in a public, open forum, or other Internet group or social media site that may have more limited access, but is a disclosure to persons that are not a party to this lease.

## 4.9 RIGHT OF RE-ENTRY

~~Landlord shall have the right, with or without terminating this Lease, to re-enter the Premises and take possession thereof by summary proceeding, eviction, ejectment or Table of Contents otherwise and may dispossess all other persons and property from the Premises.~~

otwiths...
he conditi...
Tenant here...
of new and ic...
.asonable care
s failure to use
· · .net's on

By signing below, you acknowledge and agree to the terms in Section 4.

X _____ *A H*
Afnan M. Husain



**Gardner Investments, Inc.**

1905 Stevens Ave • Suite B • Minneapolis, MN 55403
(651) 777-3612

# 5. First Month Rent Deferred Addendum

## 5.1  TENANT'S 1ST MONTH RENT

Tenant shall receive as deferred rent the first month's rent of $760.00 - for the rent period beginning 10/24/2024 . This deferred rent shall be totally forgiven on 11/30/2025 provided Tenant has not violated any term or condition including paying rent late. Tenant will only be able to take this credit if Tenant remains for the entire lease period.  If for whatever reason, tenant does not stay the entire lease period, or if tenant is delinquent in any monies due and owing then Tenant or in any way violates any term or condition of the lease the entire amount of

| | |
|---|---|
| Rent | $760.00 |
| Liability to Landlord Insurance | $10.50 |
| Admin Fee - Liability to Landlord Insurance | $4.50 |
| **Total:** | $775.00 |

shall   immediately be due and payable.

By signing below, you acknowledge and agree to the terms in Section 5.

X 
Lessee                          IP Address: 172.58.10.92
                                10/23/2024 09:08pm CDT



Gardner Investments, Inc.

1905 Stevens Ave • Suite B • Minneapolis, MN 55403
(651) 777-3612



# 6. Property Rules and Regulations

## 6.1 GENERAL RULES AND POLICIES

Congratulations on your decision to make 1905 Stevens your new home. On behalf of all of us, welcome to your new home. So that we are all on the same page I would like to go over some of our House Rules, Instructions, and Regulations.

### CONTACT INFORMATION

1905 Stevens is independently owned and operated. Our office is located at 1905 Stevens Ave So. Suite B, Mpls MN. 55403. The best way to reach the manager is to email us through your tenant portal or call the office at 651.777.3612. All maintenance concerns should be reported through your online tenant portal so that they can be handled in a timely fashion. In case of a maintenance emergency such as no heat, flooding, or no electric call 612.283.1074 for life threatening emergencies hang up and call 911

### RENT & LATE FEE
Your Rent of

| | |
|---|---|
| Rent | $760.00 |
| Liability to Landlord Insurance | $10.50 |
| Admin Fee - Liability to Landlord Insurance | $4.50 |
| **Total:** | **$775.00** |

is due on or before the 1st day of each month. It is strongly recommended that you set up an automatic payment out of a bank account or you can use a credit or debit charge. Third party charges may apply.. You can also mail a check or money order, but please know that there is a $15.00 service charge that will be added to your rental account for each check payment. Cash is not allowed. If your check is not signed or does not have remittance information on it we can not deposit it. Your rent will be considered unpaid and will incur late charges. Please write your apt number on your payment.

If Rent is not received on or before 4:00 PM on the 3rd of each month it will be considered late and incur an 8% late fee. Any unpaid balance regardless if it's current rent due or accumulated from previous months will incur an 8% late fee. There is also a $50.00 administrative fee added to accounts with any balance greater than one half of one month's rent assessed after the 9th day of each month. This Administrative Fee is NOT a late fee but our costs in attempting collection and costs associated therewith.

If you will be late paying rent for a month you should contact us directly and work out arrangements for payment. This will avoid miscommunication and possible legal actions taken by our Attorney.

### INFRACTIONS
If you violate any of the rules outlined herein you will receive an infraction letter. Additionally, you may be fined up to $200.00 and/or evicted without notice.

### SMOKING

No smoking or vaping of anything is permitted anywhere within the building. You will be fined $200.00 for smoking anywhere in the building and possibly evicted.

### LOCKOUTS AND LOST KEYS
If you lock yourself out of the building or apartment there is a $75.00 to $150.00 lock out charge. There is a $125.00 charge for a replacement security door key or FOB and $50.00 to $150.00 to replace your unit or mail box keys.

### HOUSEKEEPING
Your apartment must at all times clean and free of debris at all times. We will be conducting housekeeping inspections periodically through the year inspecting each and every apartment to ensure that sanitary and safe conditions are being maintained. You will be warned to clean unsanitary areas and if you do not we will clean and charge you for it. You will also receive an infraction.

### SMOKE & CO DETECTORS
Minnesota State Law states that it is illegal for a resident to remove, disable, or tamper with a smoke detector. If during an inspection we discover this we will charge $50.00 to reinstall and $200.00 to replace the detector and you will receive an infraction. As a friendly reminder



our building is smoke free. There is no smoking anywhere inside the building or your apartment.

## TRASH REMOVAL

All trash must be in bags and placed into the dumpster. You will be charged $25.00 for any bag left in the hallway or building common areas and receive an infraction. Please note that only normal household waste is allowed in the dumpster and NO furniture is allowed. Our trash service charges us for excessive trash such as when moving out as well as removing furniture and we will pass that on to you. If you place your old furniture out into the hallway or basement we will dispose of it and charge you for time and disposal cost. The trash collection site is under 24 hours a day survaniance.

## SURVEILLANCE

For your protection the common areas are monitored by surveillance cameras including the area surrounding the dumpster and recycling.

## CONTRABAND

We are a drug free property. If during any inspection of your unit we discover any drugs or drug paraphernalia we will confiscate it and you will receive an infraction and fine. Additionally, no guns or weapons are allowed in the premises.

## QUIET ENJOYMENT OF THE PREMISES AND SAFE ENVIRONMENT

We do not allow any behavior that is rude, threatening, or disrespectful of those residents or staff. We currently have on site staff who will be patrolling the building at various times. Loud tv, music or parties will not be allowed after our quiet time of 10:00 pm. If you violate this rule you will receive a lease infraction and may be immediately asked to vacate.

## PARKING & PLOWING

Parking is only for residents that have paid for a specified parking spot. If you are interested in a parking spot please contact your manager. If you park in back in a parking spot you are not paying for or assigned we will tow you away at your expense without prior warning.

## LEASE RENEWAL & VACATING

~~You will receive two and one half months prior to the end of your lease a letter stating the new terms of the next lease period. You must provide written notice of your intention to not renew and vacate at least 2 full months and 1 day prior to the end of your lease or you may lose your deposit and one for future month's rent. If no notice to vacate is received then we will send you a new electronic lease for you to review and sign. If you don't sign the lease and you don't turn in notice to vacate you will be charged a $300.00 month to month fee until you sign the lease. Your deposit will be returned within 21 days after you turn in your keys, vacate the premises, and provide us with your forwarding address. Please contact the post office with your new forwarding address.~~

## PET POLICY

Pets are not allowed on the premises without prior written permission. Pet fees and monthly pet rent will apply. If you are approved to have an animal in your apartment you cannot go out and just get another animal. Each pet must be approved and there is a 2 pet maximum.

Although we do allow service animals no pet is considered a service animal until all paperwork is received. You will be fined and possibly evicted if you bring a pet into the property without the proper paperwork.

All Pets and Service Animals MUST be properly licenced in the City of the property.

Once again, thank you for making your home and we look forward to a bright and pleasant future.

Sincerely,

Mr. Corey Favaro

12

g common areas
.....d  Our trash

ng below, you acknowledge and agree to the terms in Section 6.

X *Afnan Husain*

**Lessee**

IP Address: 156.47.105.149
10/23/2024 09:23pm CDT

13



**Gardner Investments, Inc.**

1905 Stevens Ave • Suite B • Minneapolis, MN 55403
(651) 777-3612

# 7. Sign and Accept

### 7.1  ACCEPTANCE OF LEASE

This is a legally binding document. By typing your name, you are consenting to use electronic means to (i) sign this contract (ii) accept lease agreement and addenda. You will receive a printed contract for your records.

X *Afnan Husain*
---
Lessee                    IP Address: 156.47.105.149
                          10/23/2024 09:23pm CDT


X *Marshall B. Jackson*
---
Lessor                    IP Address: 24.179.237.226
                          10/24/2024 07:07am CDT


> **WITHOUT RECOURSE**
>
> **PAY TO THE ORDER OF:**
>
> **Gardner Investments, Inc.**
> _____
>
> By _____
>     AFNAN HUSAIN, Principal


Notary Acknowledgment

_____
AFNAN HUSAIN

State of Minnesota

County of Nicollet

On this 5 day of DEC, 2024, before me, Sara Harkins (Name of Notary Public), personally appeared Afnan Husain, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

Signature of Notary Public: _____

My Commission Expires: 1.31.2029



> Sara J Harkins
> Notary Public
> Minnesota
> My Commission Expires Jan. 31, 2029